## 9035

### STATE v. TIDWELL.

#### (84 S. E. 778.)

CRIMINAL LAW. JURORS. SUMMONING AND IMPANELING. HOMICIDE. EVIDENCE. WITNESSES. CROSS-EXAMINATION.

1. JURY—SUMMONING JURORS—NONCOMPLIANCE WITH STATUTE.—Conceding that Civ. Code 1912, sec. 4026, providing that jurors shall be summoned "as provided by law," refers to Civ. Code 1902, sec. 2923, providing that the sheriff shall summon each person drawn as juror by reading to him the venire with his indorsement thereon of such person having been drawn or by leaving at his place of abode a written notification thereof and of the time and place of the sitting of the Court, where the sheriff mailed a subpœna to each of the 36 men on the venire, 27 of whom acknowledged the receipt of the subpœna and appeared in Court, and the sheriff also served as many of the other 9 men as he could find by delivering the subpœna to them, and one of them appeared, the failure to comply strictly with the statute was not ground for quashing the venire, since while jurors ought to be summoned in formal manner, and all named in the venire, who can with reasonable diligence be found, ought to be summoned and to attend, a formal summons is not necessary, if they attend.

2. JURY—ADDITIONAL JURORS—STATUTORY PROVISIONS.—Under Civ. Code 1912, sec. 4023, providing that nothing in that article shall prevent the clerk of Court of Common Pleas from issuing venires for additional jurors in term time upon the order of the Court whenever it is

necessary for the convenient dispatch of its business, in which case
the venire shall be served and returned and the jurors required to
attend on such days as the Court shall direct, where the sheriff served
by mail or in person all of the 36 men named in the original venire,
the Court, after the original panel had been exhausted in a homicide
case, was warranted in ordering the issuance of a venire for addi-
tional jurors. .

3. JURY — ADDITIONAL JURORS — STATUTORY PROVISIONS — "JURORS IN
ATTENDANCE"—TALES BOX.—Under Cr. Code 1912, sec. 82, relative to
peremptory challenges, Civ. Code 1912, sec. 4018, providing that the
names on the jury list shall be written on separate ballots and placed
in a jury box, which shall be kept securely locked, and that at the
same time there shall be placed in a special apartment in such box,
to be known as the "tales box," the names of not less than 100 nor
more than 400 persons, whose names appear on the list as residing
within five miles of the courthouse from which jurors shall be drawn
to supply deficiencies arising from any cause of emergency during
the sitting of the Court, section 4023 relative to issuing venires for
additional jurors in term time, and Circuit Court rule 25 providing
that in the impaneling of a jury in criminal cases, where the right of
peremptory challenge is claimed and allowed, a child under 10 years
of age shall draw one from the names of all the jurors in attendance,
which one, having answered, shall be presented to the accused, and
so on, until, in regular course, the panel be exhausted or a jury
formed, where, upon the exhaustion of the regular panel in a homi-
cide case, the Court directed the issuance of a venire for 15 addi-
tional jurors, it was error to call one of such additional jurors who
happened to be present in Court without waiting until all of such
additional jurors had been summoned and given a reasonable time to
appear and without then drawing the names as provided in the rule,
as "the jurors in attendance" within the rule means the jurors in
attendance or who have had notice and a chance to attend.

4. CRIMINAL LAW—JURORS—SUMMONS TO ATTEND.—Where all of the
men drawn as jurors and named in the venire, who could be found,
were either served personally with notice, or acknowledge service by
mail of notice, to attend as jurors, the irregularity in attempted
service by mail is immaterial, not of substance, and does not invali-
date the panel.

5. CRIMINAL LAW—JURORS—IMPANELING.—A juror should not be pre-
sented to the defendant in impaneling the jury in a criminal case,
and the defendant required to exercise his right to challenge, before
the sheriff has exercised due diligence to summon all the jurors named
in the venire, and before such jurors could have a chance to attend.

6. HOMICIDE—EVIDENCE—DECLARATIONS OF DECEASED.—On a trial for
homicide, where accused testified that, at an interview between him
and deceased a few days before the homicide, deceased manifested a
hostile and threatening attitude towards him, it was error to admit

⸢,⸣ evidence of deceased's declarations a few minutes after such interview as to things that occurred in the interview having no reference to his claimed threats or threatening attitude.

7. Homicide—Evidence—Admissibility.—On a·trial for killing a man claimed to have wronged accused's daughter, it was error to admit evidence and permit cross-examination of accused and his daughter as to the lewd life of the daughter and her stepmother, accused's wife, and their illicit intercourse with men other than deceased.

8. Witnesses—Contradiction—Admissibility.—On a trial for killing a man as a result of a meeting between him, another man, and accused's wife and daughter at a bawdyhouse, the testimony of the proprietor of such house that deceased did not engage the rooms at her house was irrelevant and incompetent to contradict the daughter's testimony that he did engage the rooms.

9. Criminal Law — Homicide — Witnesses — Cross-Examination. —A cross-examination of a defendant, being tried for murder, while on the stand as a witness, upon collateral, immaterial and irrelevant matters, which prejudices the defendant's cause and tends to prevent a · fair trial thereof, is reversible error.

10. Criminal Law —Homicide — Witnesses—Cross-Examination.—The cross-examination of the daughter of a defendant, on trial for murder upon collateral, immaterial and irrelevant matters, which exposed her to the contempt and ridicule of the jury, and prejudiced the defendant's cause and tended to prevent a fair trial thereof, is reversible error.

11. Criminal Law—Homicide—Witnesses—Evidence.—The contradiction of a witness as to an immaterial statement as to a collateral matter is both irrelevant and incompetent.

12. Criminal Law—Homicide—Evidence.—The admission of irrelevant testimony which tends to prejudice the defendant's cause, and prevent a fair trial thereof, is reversible error.

13. Homicide—Presumptions and Burden of Proof—Insanity.—One who pleads unsoundness of mind in excuse of a homicide must prove such unsoundness by a preponderance of the evidence or by so much evidence as will raise a reasonable doubt about his guilt of the offense charged; and hence an instruction that while defendant was bound to prove, by a preponderance of the evidence, that he was of unsound mind, if upon a consideration of the entire testimony any reasonable doubt remained as to whether or not he was sane, he was entitled to an acquittal, was properly refused.

Before Mauldin, J., Greenville, May, 1914.    Reversed.

The defendant, G. W. Tidwell, being convicted for manslaughter, under an indictment for murder, appeals.

The seventh request to charge, which was refused, is as follows:

"7. That while it is true that the defendant must prove that he was of unsound mind at the time of the act in question by the preponderance of the evidence, yet it is also true that upon a consideration of the entire testimony in the case, the State's as well as the defendant's, if any reasonable doubt remains in the mind of the jury as to whether or not he was sane, then the defendant is entitled to a verdict of 'not guilty.' "

The facts are stated in the opinion.

*Messrs. James H. Price* and *Townes & Earle,* for appellant, cite: *As to improper cross-examination:* 33 S. C. 592. *Object of cross-examination:* 12 Rich. 654; 83 S. C. 530; 98 S. C. 117. *Question of seduction, etc., not an issue:* 63 Cal. 288. *A witness cannot be contradicted on a collateral matter:* 76 S. C. 129; 55 S. C. 43; 88 S. C. 129; 89 S. C. 152. *As to seventh request to charge:* 39 S. C. 107. *Fair trial prejudiced by improper cross-examination and admission of irrelevant and incompetent testimony:* 27 So. 987; 99 S. W. 945; 63 Cal. 288; 63 Pac. 752, 755.

*Mr. Solicitor Bonham,* and *Messrs. Cothran, Dean & Cothran,* for respondent, cite: *As to motion to quash venire.* Harper 91; 3 Strob. 33; 26 S. C. 114; 73 S. C. 516. *As to mode of presenting special venire:* Code, secs. 4023, 4027; Rule C. C. 25. *Admission of evidence:* 56 S. C. 454.

March 15, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Verdict below for manslaughter; judgment, imprisonment at hard labor for twelve years; bail refused; appeal here by defendant for a new trial.

The defendant is a man past middle life and hitherto of excellent reputation; the deceased was a young man in the prime of life, and unmarried and of feigned chastity; the transaction arose out of the adulterous life of the deceased. the defendant's young daughter, seventeen years of age, and the vengeance of the father thereabout.

The deceased resided in Greenville, had lucrative employment there in the office of a cotton mill, and had good connections.

The defendant resided at Clinton and was a traveling newspaper canvasser; and his daughter lived there with him and her stepmother.

The deceased visited the girl at her Clinton home, and by her account, there first wronged her in her father's house, in December, 1913.

In the next month he wrote to her a letter which contained no suggestions of wrongdoing, but, on the contrary, expressed a tender affection for the girl. In the early months of 1914 the girl fell deep into the mire of sin, and her stepmother with her. They met by appointment the deceased and another man at a house of prostitution kept by a negress in the city of Greenville.

The father got news of the scandal, repaired to the scene. and sought an interview with the deceased, but with no satisfactory result. That interview was at a hotel on Sunday afternoon. On the Thursday following, which was the 12th of March, the defendant sought the deceased at the place of his employment, and shot him to death with a pistol.

The conviction was unlawful, and there must be a new trial.

There are fifty exceptions, which were unnecessary, and much encumber the record. The defendant's counsel has grouped the fifty exceptions into sixteen, and the counsel for the State has stated the alleged errors under four heads. And there are really only four substantial issues, to wit:

(1) Ought the first venire to have been quashed?

(2) Ought the juror, Rogers, to have been presented to the defendant before all the fifteen additional jurors had been summoned to appear and before there had elapsed a reasonable time for them to appear?

(3) Was incompetent testimony allowed? And this includes, was there improper cross-examination of the father and daughter?

(4) Was the defendant's seventh, and refused request, a right statement of the law?

These in their order. The first issue must go against the appellant. The venire first sent out by the clerk to the sheriff directed him to serve thirty-six men to sit as jurors.

The service was not made by a delivery into the hands of the thirty-six men of a subpœna to appear in Court; but the service was made "by mail," and that method consisted in sending the subpœna in a letter to the person, and also an acknowledgment of its receipt; which acknowledgment the person was expected to sign and return by mail to the sheriff.

Of the thirty-six men named in the venire twenty-seven signed the acknowledgment, returned the same to the sheriff, and appeared in Court to serve as jurors.

As many of the nine others as the sheriff could find were served by a delivery into their hands of the subpœna to appear. One of these appeared, so that twenty-eight men named in the venire were present in Court and eight were absent.

The sole contention is, that the sheriff summoned those twenty-seven men in an unlawful manner; that the direction of the statute to summon them "as provided by law" (Code of Laws of S. C., 1912, vol. I, sec. 4026), means the manner prescribed by the Code of Laws of S. C., 1902, sec. 2923. Granting that the sheriff ought to have followed the direction of the Code of 1902, which is not adjudged, his failure to do so was not of substance.

The character of the men named in the venire is not challenged; the successive methods of their selection are not questioned. These are the essential things which dedicate men to jury service. It matters little how they get notice to appear in Court, so they are fit and are rightly selected. They ought to be summoned in formal manner, and all named in the venire who can, with reasonable diligence, be found ought to be summoned, and all ought to attend; but a formal summons is not necessary, if they attend. *State* v. *Crosby,* 16 S. C. L. (Harper's Law), 91.

Out of the twenty-eight men who appeared, as many as eleven were presented to the defendant and sworn as jurors; the others all were challenged by the State or by the defendant, and that exhausted the panel.

The testimony shows that the sheriff served, either by mail or in person, all the thirty-six men named in the venire who could be found. The Court then was warranted to proceed under section 4023, vol. I, Code of Laws, 1912, to provide "additional jurors." Upon a proper order to do so, the clerk issued his venire for fifteen additional jurors to appear forthwith. But before the sheriff had "served and returned" the venire, one man specified in it, Rogers by name, who happened to be present in Court was called to the book.

At that instant the defendant had already exercised nine of his ten peremptory challenges; and he was obliged to accept or to reject the man, Rogers, and a rejection, which he did, exhausted his peremptory challenges, so that he was compelled to accept the next name drawn out. And out of this the second issue arises, and it must go against the State. The appellant objected that "it has not been shown to the Court that the fifteen who were drawn here served, and that these names were not put in the hat and the names drawn out so as to give us the opportunity of having the entire fifteen of the venire in Court." The question is governed by section 82 of the

Criminal Code of Procedure, sections 4018 and 4023 of the Code of Laws, 1912, the twenty-fifth rule of Court, and by the decided cases.

For accuracy of statement the panel of thirty-six jurors will be referred to as the original panel, and the panel of fifteen jurors will be referred to as the additional panel, for the statute describes them as "additional jurors."

There is no difference betwixt the character of the men on the two panels; there is no difference in the agency by which the names have heretofore been put into and drawn out of the "jury box;" there is no difference in the agency by which the members of each may be brought into Court; there is no difference in the manner by which each panel shall be presented to the accused on his trial. The only differences in the cases are these: One panel is put into the "jury box" and the other panel is put into the apartment of the jury box known as the "talles box;" one panel is summoned by a venire issued before term time and the other by a venire issued in term time.

Manifestly, it would not be lawful for a trial Court to proceed against objection to select a jury to try the accused out of the original panel, before the sheriff had exercised due diligence to summon all the jurors named in the venire, and before such jurors could have a chance to attend. Such a procedure would open the door for an unfair trial; thereby only jurors well known to be friendly to one side or the other might be in attendance. The case is not altered, on principle, that the selection is to be made from the additional panel, although that panel is for the "convenient dispatch of business." The statute, moreover, provides that the "venire shall be served and returned," presumably before or at the appearance of the jurors.

We think the twenty-fifth rule of Court does not alter the case; to "draw one from the names of all the jurors in attendance" must mean in light of reason and the law,

jurors in attendance or who have had notice to attend, and the chance to attend.

The case at bar illustrates the peril of proceeding to select jurors before the whole panel to be summoned has been served and has had a chance to appear.

We are mindful of the rule, long since enunciated, that the right to reject a juror does not include the right to select a jury. But in jury trials, like in most transactions of life, there is a lawful element of that which is called chance, for the lack of better name. With fifteen names in the hat, and a boy to draw, who can divine what may come out. If a name pleasing to the defendant he is entitled by the rule of Court and the chance to have it. And if a name menacing to the defendant, and his necessities shut him up to it, he must by the same rule and chance accept it.

We are mindful, too, of the practice of trial Courts for the dispatch of business to proceed to the selection of jurors before all those named in the additional venire have come into Court; but that practice ought to have, and under ordinary circumstances does have, the consent of counsel, except in a pinch like this.

The third issue must go against the State.

The defendant had testified to an interview with the deceased at a hotel on Sunday before the homicide, whereat deceased manifested a hostile and threatening attitude towards defendant. The State called Rickman and Brunson as witnesses; they were not present at the interview, but talked with deceased a few minutes thereafter. These witnesses detailed the declarations of deceased about the colloquy. These declarations had no reference to defendant's testimony about threats or a threatening attitude of deceased at the interview; they referred to what the deceased told defendant about the lewdness of his daughter with other men than himself. They were not admissible under the rule in Chaffin's case (56 S. C. 434,

33 S. E. 454), and they were both irrelevant and incompetent.

The third issue includes the defendant's objection to the State's cross-examination of the father and the daughter. The objection is sustained.

The cross-examination of G. W. Tidwell covers thirty-three printed pages and that of Olive Tidwell covers twenty-three printed pages.

Much of it was directed to an exposure of Olive's lewd life with other men; much of it was directed to an exposure of Mrs. Tidwell's lewd life with other men. There is high warrant for the belief that a father is most anxious about a prodigal child. That this child was lost in the ways of sin was no reason why she should be exposed to the contempt and ridicule of the jury; and was no reason why a father's solicitude about her should be dulled.

The character and life of the wife, Mrs. Tidwell, had no relevancy to the issues that were being tried; yet not only was the defendant closely questioned about his wife, but a witness, Woods, was produced to swear to his illicit intercourse with Mrs. Tidwell. The testimony was incompetent.

A witness, Bussey, testified to his illicit intercourse with Olive, in contradiction to her denial of the fact. The testimony was irrelevant and incompetent.

A witness, Gosnell, testified that Mary Walker, the negress proprietor of the bawdy house, had told him that the deceased had not engaged the rooms at her house. This was to contradict Mary, who had sworn that deceased did engage the rooms. This testimony was irrelevant and incompetent.

There is no need to further discuss the testimony, or to point with detail to the errors in it; they are manifest, for they infringe the plainest rules of evidence, and need not be suggested to guide in the next trial of the case.

It is sufficient to say that the testimony which has been referred to, and the cross-examination which has been recited, were sufficient to prejudice the defendant's cause, and were in denial of that fair trial to which he is entitled.

The fourth issue must go against the defendant. Let the seventh request be reported. The true rule is, that he who pleads unsoundness of mind in excuse for a homicide must prove such unsoundness by a preponderance of the evidence, or by so much evidence as will raise a reasonable doubt about the defendant's guilt of the offense charged. *State* v. *McIntosh,* 39 S. C. 107, 17 S. E. 446.

The judgment below is reversed, it is so ordered, and a new trial must be had.