## 17715

STATE, Respondent, v. William Otis BRITT and Douglas WESTBURY, Appellants

(117 S. E. (2d) 379)

*James N. Rahal, Esq.,* of Savannah, Georgia, *for Appellant, William Otis Britt,*

*Messrs. C. Walker Limehouse* and *Henry R. Sims II,* of Orangeburg, *for Appellant, Douglas Westbury,*

*Julian S. Wolfe, Esq., Solicitor,* of Orangeburg, *for Respondent,*

November 16, 1960.

Moss, Justice.

The Grand Jury of Orangeburg County did, on September 15, 1958, at a Court of General Sessions, return an in-

dictment charging William Otis Britt and Douglas Westbury, the appellants herein, along with Lee von Tilson, with the murder of Harry Boyd Ray, it being asserted that the homicide occurred in Orangeburg County on September 7, 1958. The three were duly arraigned upon such indictment and entered a plea of "Not Guilty". A motion for a continuance was made and granted at the 1958 September term of Court. The case was thereafter called for trial at Orangeburg, South Carolina, on January 5, 1959. The result of this trial was that the appellants herein were found guilty of murder and were sentenced to death by electrocution. Lee von Tilson was found guilty of murder with a recommendation to mercy. The appellants herein, from such conviction and sentence, appealed to this Court, and Lee von Tilson did not appeal from his conviction and sentence. We reversed the conviction of the appellants and remanded the case for a new trial. *State v. Britt et al.,* 235 S. C. 395, 111 S. E. (2d) 669.

The case against the appellants was retried at Orangeburg, South Carolina, commencing on January 11, 1960. The appellants were again found guilty of murder and were sentenced to death by electrocution. Following the conviction of the appellants, motions for a new trial were made and denied. Due notice of intention to appeal to this Court was given. The questions raised by the appellants will be considered *seriatim.*

When this case was called for trial the appellants made a motion for continuance beyond the term. The ground of the motion for continuance was that an additional venire of jurors had been drawn and the appellants had not had adequate time to properly study this list of additional jurors.

We have held in numerous cases that a motion for a continuance is addressed to the discretion of the trial Judge and his disposition of such motion will not be reversed unless it is shown that there was an abuse of such discretion to the prejudice of the appellants. *State v. Lytchfield,* 230 S. C. 405, 95 S. E. (2d) 857, 66 A. L. R. (2d) 263; *State*

*v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850; and *State v. Britt et al.,* 235 S. C. 395, 111 S. E. (2d) 669.

It appears from the record that on January 7, 1960, the Clerk of Court for Orangeburg County issued a writ of venire facias, directing and requiring the jury commissioners of said Orangeburg County to draw, as provided by law, the names of twenty extra petit jurors, to appear before the General Sessions Court for said county on January 11, 1960. Pursuant to such writ, twenty extra petit jurors were duly drawn and summoned to serve as extra petit jurors at the term of General Sessions Court for Orangeburg County commencing on January 11, 1960. It appears from the record that one of the counsel for the appellant Westbury was present at the time the extra venire of jurors was drawn. Certainly counsel had from January 7, to January 11, 1960, to make a study of the extra venire of jurors drawn as aforesaid. In the case of *State v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850, 853, denial of a motion for a continuance was upheld where counsel for the defendant had been appointed by the court "three or four" days prior to the date of trial. It further appears that the trial Judge had all of the jurors, not only on the regular panel but on the extra venire, sworn and he examined them in detail and separately on their *voir dire.* There was presented for service as jurors only those who qualified upon such *voir dire* examination. A review of the entire record in support of the motion for a continuance convinces us that the trial Judge committed no error in refusing to grant such motion.

When this case was called for trial both of the appellants made a motion for a severance and separate trial. The appellants assert that their defenses are antagonistic to one another; that evidence in favor of one appellant would be admissible on a separate trial and would not be allowed on a joint trial; that evidence incompetent as to one of the appellants and introduced against the other appellant would be prejudicial to such other appellant; and that a confes-

sion by one of the appellants would be calculated to prejudice the jury against the other appellant. Additionally, the appellant Westbury asserts that if he were granted a separate trial he could offer testimony showing his cooperative attitude in submitting to a lie detector test; that he could impeach the testimony of the appellant Britt by showing his previous convictions of the offenses of robbery and grand larceny. The appellant Westbury also asserts that upon a separate trial he could show that he was the weaker of the two and that he was overpersuaded and dominated by Britt, resulting in the commission of the crime of murder with which he was charged.

When this case was before us upon the previous appeal, we held that a motion for a severance and separate trial on the part of one or more defendants in a case, where several persons are jointly charged with a criminal offense, is addressed to the discretion of the trial Judge, and only abuse of that discretion constitutes reversible error. *State v. Britt et al.,* 235 S. C. 395, 111 S. E. (2d) 669, 680, and the cases therein cited.

Each of the appellants made a written confession. These confessions concur as to many of the facts and details of the death of the deceased, who was a highway patrolman. It was contended by the appellant Britt that Westbury fired the shots that took the life of the patrolman. Westbury denies that he did fire the fatal shots. The dispute in the confessions as to who fired the fatal shots that took the life of the patrolman is the basis upon which the appellants assert that their defenses were antagonistic. When the confessions of the appellants were offered and received in evidence, the trial Judge properly ruled:

" * * *, any alleged confession, if receivable in evidence, can only be considered as evidence against the party said to have made the confession and against no one else. It cannot be considered as evidence against a co-defendant. I will instruct you again on that. Keep that in mind. Any alleged confession is only evidence, if evidence at all, against

the party it is contended made the confession and what is said therein relating to someone else is not evidence against that person."

Time and time again the trial Judge reiterated such ruling, and in his able charge to the jury, said:

" * * * You are instructed, however, that when two or more persons are charged with a crime and a confession of one implicates the other, you cannot consider it against such other defendant because a confession can only be considered as evidence against the one who made it. Obviously, one defendant cannot by his confession impute, imply or point guilt to another."

What we said when this case was previously before us is here applicable:

"Where the separate statement or confession of either of these parties implicated the others the trial court properly admitted such statement or confession against the person who made such, and he also correctly ruled that the statement or confession could not be considered against the others. He likewise charged the jury to this effect. *State v. Bagwell,* 201 S. C. 387, 23 S. E. (2d) 244 and *State v. Jeffords,* 121 S. C. 443, 114 S. E. 415.

"In the *Jeffords case* this Court said:

" 'The next assignment of error is in allowing confessions of Harrison and Treece to be introduced in evidence, in so far as they contained accusations of Jeffords. The rule is very clear that the confessions must be given as made. If we strike out any part, then the confession ceases to be the confession as made. The rule in such cases is clearly to let all the defendant said be given, and the jury cautioned not to consider it against any one, except the man who makes it. This is unquestionably the rule, and it was strictly and scrupulously followed.' "

The appellant Westbury asserts that if he were granted a separate trial he could offer testimony showing his cooperative attitude in submitting to a lie

detector test. In the previous opinion in this case we held that evidence that one of the appellants refused to take the lie detector test was inadmissible. Reference to the previous opinion is had for authorities supporting such holding. It is our opinion that evidence of the willingness of the appellant Westbury to take a lie detector test was inadmissible whether tried jointly with the appellant Britt or separately. In the case of *People v. Carter*, 48 Cal. (2d) 737, 312 P. (2d) 665, it was held, in a murder prosecution, that the trial court erred in not excluding a statement of the suspect that he was willing to take the lie detector test. In *Commonwealth v. Saunders*, 386 Pa. 149, 125 A. (2d) 442, it was held that since lie detector evidence is not admissible, neither is evidence of professed willingness or refusal, to submit to such test. In *Commonwealth v. McKinley*, 181 Pa. Super. 610, 123 A. (2d) 735, it was held that the results of a lie detector test being inadmissible, the offer of the accused to undergo such test was also properly excluded from the jury's consideration. In this connection see Vol. 2, A. L. R. (2d) Supplement Service, 1960 Issue, at page 1998.

It is also asserted by the appellant Westbury that if he were granted a separate trial that he could impeach the testimony of Britt by showing his previous convictions of the offenses of robbery and grand larceny. This position presupposes that upon a separate trial that Britt would be a witness against the appellant. Certainly upon a separate trial the confession of Britt would not be admissible against Westbury. The trial Judge ruled that the confession was not admissible against Westbury upon his joint trial with Britt. It is true that on a separate trial, should Britt have appeared as a witness against Westbury, his testimony could be impeached by showing convictions of robbery and grand larceny. If Britt had testified in this case, which he did not, his reputation for truth and veracity could have been impeached by showing his previous convictions of robbery and grand larceny. *State v. Britt et al.,*

*supra.* We do not think the trial Judge committed any error in refusing to grant a separate trial to Westbury upon the ground stated.

Westbury also asserts that upon a separate trial he could show that he was overpersuaded and dominated by Britt. If such was a fact, there was no reason why Westbury could not have tendered such evidence in the trial of this case. We find no abuse of discretion or error of law on the part of the trial Judge in refusing to grant the motions made for severance and separate trials.

The appellant, Douglas Westbury, requested the trial Judge to propound certain questions to the jurors upon their *voir dire* examination. These requests dealt with relationship to the appellants or the deceased; whether they had formed or expressed an opinion as to the guilt or innocence of the accused; whether they were conscious of any bias or prejudice for or against the accused; whether they were aware of anything that would prevent the giving of a fair and impartial trial; and whether they were either a member of the grand jury that indicted the accused, or a member of the petit jury panel when this case was previously tried. These questions were asked upon such examination. In addition, Westbury requested the trial Judge to ask the jurors, "Are you conscious of any bias or prejudice either in favor of or against capital punishment?" The trial Judge, in conducting the examination, asked the question, "Are you opposed to capital punishment?" The appellant Westbury asserts that the failure of the trial Judge to ask the question propounded by him as to capital punishment, as above quoted, was error. It appears from the record that six of the proposed jurors affirmatively answered that they were opposed to capital punishment, and were excused as jurors. We have held that in a murder case, refusing to allow a juror to serve on the case, after admitting on his *voir dire* examination his disbelief in capital punishment for murder, was not error. *State v. Robinson,* 149 S. C. 439, 147 S. E. 441; *State v. Hyde,* 90 S. C. 296, 73 S. E. 180. In the case

of *State v. James,* 34 S. C. 49, 12 S. E. 657, 658, it was said:

" * * * When the juror was asked whether he was opposed to capital punishment, he answered unequivocally that he was. We do not think the judge committed error of law in rejecting the juror."

In the case of *State v. Griggs,* 184 S. C. 304, 192 S. E. 360, 365, it was held proper in a prosecution for murder to question prospective jurors as to whether they were opposed to capital punishment, the Court saying:

" * * * We will state, however, that this is a question that has been customarily asked in cases where a conviction carried the penalty of death, and recognized by this court as a proper inquiry."

In the instant case, the trial Judge, under his *voir dire* examination, asked all prospective jurors the statutory questions required by Section 38-202 of the 1952 Code of Laws. It should be pointed out that this section does not require an examination of a juror as to his opposition to capital punishment. However, where a conviction carries the penalty of death, the trial Judges customarily ask the prospective juror if he is opposed to capital punishment. We have held that after the statutory questions have been asked and answered, any further examination of a juror on *voir dire* must be left to the discretion of the trial Judge, which is subject to review only for abuse thereof. *State v. Bethune,* 93 S. C. 195, 75 S. E. 281. We have also held that the scope and limit of the interrogation of a juror on *voir dire* is within the sound discretion of the trial Judge, and it is for him to determine the character of the questions proposed, and when the examination shall end. *State v. Britt et al., supra.* It is the duty of the trial Judge to assure himself that each and every prospective juror is unbiased, fair and impartial, and that no one of them is disqualified. We think the examination by the trial Judge of the jurors in this case, as to opposition to capital punish-

ment, was sufficient. There was no abuse of discretion or error of law in failing to ask the jurors the question relating to capital punishment as propounded by the appellant.

The appellant Westbury contends that the trial Judge committed error in not dismissing for cause a prospective juror, T. E. Briggman. This juror, upon being examined on his *voir dire,* stated that he had formed an opinion as to the guilt of the appellants. He also stated that it would require evidence to remove such opinion, but notwithstanding this said opinion, he stated he could give a fair and impartial trial based solely upon the evidence produced in the case. He further testified that he was not conscious of being biased or prejudiced for or against the appellant. This juror further testified that he was a member of the petit jury in January, 1959, when this case was first tried, but that he did not serve on the trial jury. The trial Judge held that this juror was qualified and the appellant, Westbury, excused this juror by a peremptory challenge. The record shows that the appellant Westbury did not exhaust his ten peremptory challenges guaranteed to him by Section 38-211 of the 1952 Code of Laws. Since this appellant did not exhaust his peremptory challenges, he is in no position to complain of the trial Judge's refusal to dismiss this juror for cause. It was so held in the case of *State v. Gantt et al.,* 223 S. C. 431, 76 S. E. (2d) 674, 677, where this Court said:

" * * * But, aside from this, the defendant did not exhaust his peremptory challenges, and therefore is not in a position to avail himself of error in overruling challenges for cause. *State v. McQuaige,* 5 S. C. 429; *State v. Anderson,* 26 S. C. 599, 2 S. E. 699."

This exception is overruled.

It appears from the record that on January 7, 1960, pursuant to a direction of the Court, and a writ of venire facias issued by the Clerk of Court on the same date, the jury commissioners drew twenty extra petit jurors for service dur-

ing the second week of the term of the Court of General Sessions. These jurors were drawn from the tales box. Counsel for the appellant Westbury objected to the array of jurors so drawn upon the ground that the additional venire should have been drawn from the regular jury box rather than from the tales box. It is provided in Section 38-61 of the Code, that the jury commissioners not less than ten nor more than twenty days before the first day of each week of any regular or special term of the Circuit Court shall draw the requisite number of petit jurors to serve for such week only. It is also noted that Section 38-60 of the Code provides that at the time of the preparation of the regular jury box that the jury commissioners shall prepare in a special apartment in the jury box, which shall be known as "the tales box", the names of not less than one hundred nor more than eight hundred of such of the persons whose names appear on the jury list as reside within five miles of the courthouse, from which tales box shall be drawn jurors to supply deficiencies arising from any cause or emergency during the sitting of the court. Section 38-72 of the Code provides that when it is necessary to supply any deficiency in the number of petit jurors, duly drawn, whether caused by challenge or otherwise, the jury commissioners, under the direction of the court, shall draw from the tales box such number of fit and competent persons to serve as jurors as the court shall deem necessary to fill such deficiency. It is provided in Section 38-74 of the Code that in drawing the jurors from the tales box, the same rule shall be observed as in drawing from the jury box, except no notice of such drawing shall be necessary.

Under Section 38-72 of the Code, there can be no doubt that if there is any deficiency in the required number of petit jurors, such deficiency is supplied from names drawn from the tales box. It was proper when the additional jurors were drawn for them to be drawn from the "tales box." In the case of *State v. Tidwell,* 100 S. C. 248, 84 S. E. 778, 780, this Court had this to say:

"For accuracy of statement the panel of thirty-six jurors will be referred to as the original panel, and the panel of fifteen jurors will be referred to as the additional panel, for the statute describes them as 'additional jurors'.

"There is no difference betwixt the character of the men on the two panels; there is no difference in the agency by which the names have theretofore been put into and drawn out of the 'jury box'; there is no difference in the agency by which the members of each may be brought into court; there is no difference in the manner by which each panel shall be presented to the accused on his trial. The only differences in the cases are these: One panel is put into the 'jury box,' and the other panel is put into the apartment of the jury box known as the 'tales box'; one panel is summoned by a venire issued before term time and the other by a venire issued in term time."

The additional jurors were drawn pursuant to an order and venire issued in term time for the convenient dispatch of the business of the Court, and it was proper to draw such additional jurors from the tales box. This exception is overruled.

The appellant Westbury urges as error that the special or extra venire of jurors were drawn and summoned to appear before the regular jury panel was exhausted. He relies upon Section 38-72 of the Code, which provides "Whenever it shall be necessary to supply any deficiency in the number of grand or petit jurors duly drawn, whether caused by challenge or otherwise", then the jury commissioners shall, under the direction of the Court, draw from the tales box such number of fit and competent persons to serve as jurors as the Court shall deem necessary to fill such deficiency.

The record shows that the following took place with reference to the additional venire jurors:

"Mr. Limehouse: The next problem I had is this: an extra or additional venire of jurors has been summoned and I would like to be advised whether or not the twenty names will be put in the box with the forty?

"The Court: No.

"Mr. Limehouse: Draw first on the forty and then on the twenty?

"The Court: Yes, sir."

The transcript also shows that counsel for the appellant moved for a continuance of the trial of this case on the ground that they had not had ample and sufficient time to check on these additional jurors. The Court, in denying the motion, said: "As Presiding Judge, if he foresees the probability of additional jurors, he can have more drawn, I had it done so that you would have time to check the jurors."

The record also shows that when the Clerk, while the jury was being selected, announced to the Court, that the original panel had been exhausted, the trial Judge said: "You will now draw from the extra jurors." The Clerk of Court then placed the names of the extra or additional jurors in the box and proceeded to complete the jury from the extra venire of additional jurors.

Our Court has been liberal in holding that the provisions as to the drawing and summoning of jurors are usually directory only and not mandatory. In *State v. Wells,* 162 S. C. 509, 161 S. E. 177, 183, it was said:

" * * * Irregularities in the listing, drawing, and summoning of jurors may be often waived, and, even if not waived, are not in themselves acts so prejudicial as to require the quashing of a venire or to warrant the court in setting aside a judgment based upon a finding of verdict of a jury irregularly drawn. The purpose of our jury laws, found in Article 2 of Volume I of the Code, is to obtain fair and impartial jurors of good citizens who possess the constitutional qualifications of jurors and to have in the courts, when needed, the proper number of such jurors. The act of 1902, as amended in 1905, embraced in the Code as Article 2, Volume I, was enacted by the legislative branch with the intention of curing irregularities and technical errors, which so often occurred previous to those enactments, in the man-

ner of obtaining jurors in the Circuit Courts, and to prevent the great delays and expenses incidental to the trial of causes. It is the purpose of this Court to carry out the legislative intent, when it is possible to do so, without infringing the constitutional provisions as to the qualifications of jurors."

Section 38-68 of the 1952 Code provides that "No more than thirty-six persons to serve as petit jurors shall be drawn and summoned to attend at one and the same time in any court, unless the court shall so order." In the case of *State v. Jackson,* 32 S. C. 27, 10 S. E. 769, this statute was construed, and it was said that whether a greater number of jurors shall be drawn is a matter left to the discretion of the Court.

Section 38-214 of the 1952 Code provides that no ■ irregularity in any writ of venire facias or in the drawing, summoning, returning or impanelling of jurors shall be sufficient to set aside the verdict, unless the party making the objection was injured by such irregularity. The appellant in this case has not shown, or attempted to show, that he was prejudiced by the drawing of the extra venire of additional jurors. None of his rights were impaired or in any way interfered with by such action. The drawing of the jurors before the exhaustion of the regular panel was beneficial to the appellant. The record shows that counsel for this appellant was present at the time of the drawing of the extra venire and was, thereby, given additional time to check the jurors so drawn. This Court will not grant relief unless it appears that the appellant has been prejudiced. Since no prejudice appears, the error, if any, was harmless. This exception is overruled.

The appellant Westbury complains that the trial Judge erred in permitting counsel for the appellant Britt to examine prospective jurors. He asserts that such examination created an atmosphere antagonistic to the appellant.

We have carefully reviewed the record and the examination of jurors as made by counsel for the appellant Britt. We find nothing in the record that would indicate that such examination was prejudicial to the appellant Westbury.

In this case, at the request of counsel for the appellants, all prospective jurors were sworn on their *voir dire* for examination, as is provided in Section 38-202 of the 1952 Code. As we have previously stated, the scope and limits of the interrogation of a juror on *voir dire* is within the sound discretion of the trial Judge and it is for him to determine the character of the questions proposed and when the examination shall cease. The trial Judge may, if the circumstances seem to him to demand it, permit counsel engaged in the cause to also examine jurors. The better practice, however, is for the Judge, and not the attorneys, to conduct the examination. *Brown v. S. H. Kress & Co. et al.*, 170 S. C. 178, 170 S. E. 142. Even though in this case the trial Judge permitted counsel for the appellant Britt to ask certain questions of the prospective jurors, we find nothing in such examination that was prejudicial to the appellant Westbury. This exception is overruled.

The appellant Britt charges the trial Judge with error in refusing to permit him to offer evidence of bias and actual prejudice on the part of the prospective jurors, in that, on *voir dire,* he was denied the right of cross examination, and the trial Judge refused to make adequate examination of the jurors. The record shows that the trial Judge sufficiently examined the jurors to determine whether they were indifferent in the cause. This is a question of fact for determination by the trial Judge and is not reviewable in this Court unless it should appear that his conclusion is wholly without evidence to support it. *State v. Fuller,* 229 S. C. 439, 93 S. E. (2d) 463. The trial Judge in this case did, with meticulous care, examine each and every prospective juror and presented them only when found

to be fully qualified and indifferent. This exception is overruled.

The next question for determination is whether or not the trial Judge committed an abuse of discretion in failing to keep the trial jury together during the progress of the trial, and in refusing to examine the members of the jury panel with respect to whether they had read or heard any comments concerning the case while they were separated and away from the courtroom.

The record shows that the trial Judge permitted the members of the jury panel to go to their respective homes at night, after appropriate admonition that they should not communicate with others or allow others to communicate with them concerning the case.

We have held in numerous cases that a trial Judge may keep a jury together or he may allow them to separate during the trial, and this Court will not upset any action he takes thereabout, unless it clearly appears that the discretion given him was abused. This rule applies in capital cases. *State v. Williams,* 166 S. C. 63, 164 S. E. 415; *State v. Dawson,* 203 S. C. 167, 26 S. E. (2d) 506; *State v. Mouzon et al.,* 231 S. C. 655, 99 S. E. (2d) 672. There is no showing that the appellants were prejudiced by the fact that the trial Judge permitted the jury to disperse. The appellants do not assert that improper influences of any kind were brought to bear upon the jury as a whole, or any member thereof. In the absence of any such showing, we will assume that every member of the jury obeyed the admonition of the trial Judge. There is nothing in the record to show any resulting prejudice to the appellants by permitting the trial jury to disperse during recess hours.

We do not think that the trial Judge committed any error in refusing to examine the members of the jury with respect to whether they had read or heard any comments on the case while they were separated and away from the courtroom. A matter of this nature must,

of necessity, be left to the sound discretion of the trial Judge, and his refusal to inquire of the jury concerning such was not prejudicial to the appellants, at least the record shows no prejudice.

The appellant Westbury asserts that the Court committed error in admitting his confession into evidence. An examination of the record shows that there was evidence to the effect that the alleged confession of Westbury was voluntary and that a copy of such confession was given to the appellant in conformity with Sections 1-64 and 26-7.1 of the 1958 Cumulative Supplement to the 1952 Code. The trial Judge submitted to the jury the issue as to whether the confession was voluntary or involuntary. The ruling of the trial Judge was in accordance with the approved practice in this State and affords no basis for a finding of prejudicial error. *State v. Britt, supra,* and *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 657. This exception is overruled.

There was admitted into evidence from Patrolman Ray's summons book, the last ticket written by him on September 7, 1958, at 12:45 A. M., charging a motorist with driving too fast for conditions. The testimony shows that this ticket was in the handwriting of Patrolman Ray and that the witness found the summons book at the place where the patrolman lost his life. The solicitor attempted to offer in evidence the entire summons book. Counsel for the appellant Westbury objected on the ground that it was not relevant to any issue in the case. After some discussion, counsel for the appellant, said: "Your Honor, we object to any part other than the speed ticket that he is desirous of putting in." The Court then, in conformity with the objection, admitted the last ticket written by Patrolman Ray, as is hereinabove described. We think no error was committed in the admission of this ticket. The appellant is not in position to complain of its introduction into evidence when he expressly consented thereto, as the above

quote shows. A review of the record shows no prejudice to the appellant by the introduction of the foregoing speeding ticket. The burden is upon the appellant to satisfy this Court that there was prejudicial error in the admission of this exhibit. This he has not done. *State v. Bullock, supra.* In the case of *State v. Gregory,* 198 S. C. 98, 16 S. E. (2d) 532, 534, the Court said:

"At the outset we repeat the time-honored tenet that ordinarily the conduct of a trial, including the admission and rejection of proffered testimony, is largely within the sound discretion of the trial judge and his exercise of such will not be disturbed by this Court on appeal unless it can be shown that there has been an abuse of discretion, a commission of legal error in its exercise, and that the rights of the appellant have been thereby prejudiced."

The confession of Westbury says that the appellants, with Tilson driving the car, left the motel which they had robbed, "at an awful speed and a patrolman got in behind us." The patrolman followed the car some distance and stopped the automobile, apparently for speeding. The introduction of the speeding ticket was relevant to show that the officer was on duty and that he was patrolling the highways just before he lost his life in the encounter with the appellants and Tilson. We think there was no error in the admission of this exhibit.

The appellant Westbury asserts that the trial Judge committed error in not permitting him to ask of an employee of Bowyer Motors of Savannah, Georgia, whether the appellant Britt had made a payment to this automobile company in the amount of $417.00 on September 8, 1958. It appears that this witness was the keeper of the records of Bowyer Motors and that when the State attempted to establish the account of the appellant Britt, objection was made by his counsel, and such was sustained by the Court. Thereafter, the counsel for Westbury attempted to prove the payment upon Britt's account of the aforemen-

tioned sum. This testimony was not relevant to any issue in the case. Objection to such was properly sustained. Hence, the question of whether it was error on the part of the Court to rule that this witness became a witness in behalf of the appellant was harmless, because the testimony was irrelevant to any issue in the case. This exception is overruled.

The appellant Britt asserts that the Court committed error in refusing to charge the law of manslaughter. We have carefully examined the testimony as is contained in the record and it fails to suggest to us any theory upon which a verdict of manslaughter could rest. We re-affirm our previous holding where we said that a new trial would not be granted for failure to charge the law of manslaughter, where there is no evidence tending to reduce the crime from murder to manslaughter. This exception is overruled. *State v. Britt et al., supra.*

The appellant Westbury asserts that the trial judge committed error in refusing his motion for a new trial. All of the grounds of such motion have been previously covered in specific questions heretofore decided. This exception is overruled.

What we have heretofore said disposes of all questions raised by the appellants, but in keeping with our invariable rule of *in favorem vitae,* we have carefully examined the record for any error affecting the substantial rights of the appellants, whether made a ground of appeal or not. We have found no such error. There are no errors apparent upon the record by which the appellants have been deprived of a fair and impartial trial.

The judgment of the lower court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.