## 1877

The STATE, Respondent v. O'Neal EVANS, Appellant.

(424 S.E. (2d) 512)

Court of Appeals

*David I. Bruck* and *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *William Edgar Salter, III,* Columbia, and *Sol. Wade S. Kolb, Jr.,* Sumter, *for respondent.*

Heard Sept. 8, 1992.

Decided Oct. 26, 1992.

GARDNER, Justice:

O'Neal Evans was convicted of armed robbery, two counts of assault and battery, assault with intent to kill, and possession of a weapon during a violent crime. We remand for an evaluation of Evans by the S.C. Department of Mental Retardation as mandated by S.C. Code Ann. § 44-23-410 (Supp. 1990). If it is determined that Evans was competent to stand trial, the jury verdict is affirmed; if not, a new trial is ordered when Evans is adjudged competent to stand trial.

## ISSUES
The issues in this case are whether (1) the trial judge erred in denying the appellant, O'Neal Evans, a mistrial because he was tried without an evaluation by the S.C. Department of Mental Retardation in violation S.C. Code Ann. § 44-23-410 (Supp. 1990), and (2) the trial judge abused his discretion by dispersing the jury at lunch after it had begun deliberations.

## FACTS
On April 28, 1990, O'Neal Evans shot John Sturvant outside a convenience store while Sturvant was waiting to use the phone. Evans proceeded to rob the convenience store clerk and shoot Darrell Sonoman who was attempting to aid Sturvant. After a police chase, Evans was arrested and charged with armed robbery, two counts of assault and battery, assault with intent to kill, and possession of a weapon during a violent crime.

On August 3, 1990, Evans was committed to the S.C. Department of Mental Health (SCDMH) for a determination of

his mental competency to stand trial. On September 19, the SCDMH filed a formal report with the court. The report stated that the appellant:

is diagnosed both mentally ill and mentally retarded. Due to this dual diagnosis, it is recommended that one examiner from the Department of Mental Health and one examiner from the Department of Mental Retardation be designated to further evaluate the [appellant] and render a final report on mental capacity.

An outpatient evaluation attached to the report reflect that Evans had a history of alcohol dependence and head injury, as well as an IQ of 68 "which falls in the mildly mentally retarded range." The evaluation, written by John H. DeWitt, MD, concluded that based on Evans' IQ score he needed a thorough evaluation by the S.C. Department of Mental Retardation (SCDMR) before an opinion could be given regarding his competency to stand trial. Dr. DeWitt recommended that Evans be referred to SCDMR.

Nineteen days after the report was filed, yet prior to an evaluation by the SCDMR, the SCDMH filed a second report regarding Evans' first and only examination. The subsequent report differed from the first, in that it attributed Evans' intellectual defects to a combination of his chronic alcohol abuse and his head injury, rather that mental retardation. In explaining the second report, Dr. DeWitt testified that he erred in the first evaluation because he relied solely on Evans' IQ score to support a diagnosis of mental retardation. The second report went on to find Evans competent to stand trial without further evaluation by the SCDMR.

The trial judge held a competency hearing on December 10, 1990. After questioning Evans and listening to the testimony of Dr. Dewitt, the trial judge found Evans competent to stand trial without further evaluation. A jury convicted Evans as charged, and the trial judge sentenced him to a total of 50 years.

## DISCUSSION

### I.

This is the first occasion the court has had to construe the

1990 amendment to S.C. Code Ann § 44-23-410 (Supp. 1990).[1] This decision is governed by the rules of statutory construction.

■ If a statute's language is unambiguous and conveys a clear and definite meaning, it is unnecessary and inappropriate for the court to use rules of statutory interpretation to impose another meaning. *Chesnut v. South Carolina Farm Bur. Mut. Ins., Co.*, 298 S.C. 151, 378, S.E. (2d) 613 (Ct. App. 1989).

■ In the present case, the language of the statute clearly mandates that if "a preliminary indication of a dual diagnosis of mental illness and mental retardation" is found, "the finding must be reported to the court" with the

---

[1] S.C. Code Ann. § 44-23-410 (Supp. 1990) provides: Whenever a judge of the circuit court or family court has reason to believe that a person on trial before him, charged with the commission of a criminal offense or civil contempt, is not fit to stand trial because the person lacks the capacity to understand the proceedings against him or to assist in his own defense as a result of a lack of mental capacity, the judge shall:

(1) order examination of the person by two examiners designated by the Department of Mental Health if the person is suspected of having a mental illness or designated by the Department of Mental Retardation if the person is suspected of being mentally retarded or having a related disability or by both sets of examiners if the person is suspected of having both mental illness and mental retardation; the examination must be made within fifteen days after the receipt of the court's order and may be conducted in any suitable place unless otherwise designated by the court; or
(2) order the person committed for examination and observation to an appropriate facility of the Department of Mental Health or the Department of Mental Retardation for a period not to exceed fifteen days.

\* \* \* \* \* \*

If the examiners designated by the Department of Mental Health find indications of mental retardation by not mental illness, the department shall not render an evaluation on the person's mental capacity, but shall inform the court that the person is "not mentally ill" and recommend that the person should be evaluated for competency to stand trial by the Department of Mental Retardation.

\* \* \* \* \* \*

If either the Department of Mental Health or the Department of Mental Retardation finds a preliminary indication of a dual diagnosis of mental illness and mental retardation, this preliminary finding must be reported to the court with the recommendation that one examiner from the Department of Mental Health and one examiner from the Department of Mental Retardation be designated to further evaluate the person and render a final report on his mental capacity. *Id.*

recommendation that examiners from both SCDMR and SCDMH be designated to further evaluate the party. The words "preliminary indication" must be given their plain and ordinary meaning in accordance with the intent of the legislature. *Id.*; *Smalls v. Weed*, 293 S.C. 364, 360 S.E. (2d) 531 (Ct. App. 1987).

A preliminary indication differs from a diagnosis. The statute clearly differentiates between the use of these words by requiring "a preliminary indication of a dual diagnosis." Whereas an indication is merely a sign of something, a diagnosis is a determination or conclusion drawn from an analysis. S.C. Code Ann. § 44-23-410 (Supp. 1990) requires only an indication of mental retardation, and not a full diagnosis, before referral to SCDMR is mandated.

On the present facts, it is evident that Evans's evaluations showed at least one preliminary indication of mental retardation. His IQ score of 68 was, according to Dr. DeWitt's reports, in the mildly mental retarded range. A low IQ score is a sign or indication of possible mental retardation. *See* J. Ellis and R. Luckasson, *Mentally Retarded Defendants*, 53 Geo. Wash. L. Rev. 414, 421-22 (1985).

In his testimony, Dr. DeWitt stated that he revised his report because he concluded, after further assessment, that Evans' IQ level may not have been caused by retardation, but by other factors. Consequently, Dr. DeWitt's second report reflects a diagnosis while the stature only requires an *indication* of a dual diagnosis.

We further note that Dr. DeWitt's subsequent retraction of his original recommendation did not undo the fact that he initially found a "preliminary indication" of mental retardation, namely Evans' low IQ score. Additionally, both evaluations listed indications of mental illness and retardation and, moreover, the first evaluation recommended a referral to SCDMR.

We hold that the preliminary indications found in the SCDMH report were sufficient to trigger the 1990 amendment to S.C. Code Ann. § 44-23-410 (Supp. 1990), and require a further evaluation by the SCDMR.

Accordingly, we hold that Evans should have been evaluated for competency to stand trial by the SCDMR.

## II.

Evans also argues that the trial judge erred in denying a motion for new trial based on a violation of Rule 23 of the South Carolina Rules of Criminal Procedure (S.C.R. Crim. P.). The rule reads, in pertinent part, "If it appears that jury deliberations may extend into the night, the court, in its discretion, may order that the jury be taken to suitable sleeping quarters; and on the following morning they shall resume their deliberations." S.C.R. Crim. P. 23. The plain language of the rule gives the trial court discretion as to whether a jury should be dispersed overnight during deliberations.

In *State v. Britt*, 237 S.C. 293, 312, 117 S.E. (2d) 379 (1960), the court found that when there is no abuse of discretion or prejudice by the fact that a jury was permitted to separate during a trial, such an action will be upheld. *Id.* The record in the present case offers no evidence that Evans was prejudiced in any way by the jury's dispersement over the lunch recess. We hold, therefore, that the trial judge did not err in denying Evans' motion for a new trial based on a violation of S.C.R. Crim. P. 23.

## CONCLUSION

For the reasons given, we remand the case to the Sumter County Court of General Sessions, and direct that an evaluation be made by the SCDMR regarding the appellant's competency to stand trial. If the evaluation reveals that Evans was incompetent to stand trial, an order reversing his conviction should be entered and a new trial granted when he is competent to stand trial. However, if the hearing reveals that Evans was competent to stand trial, the conviction stands. *See State v. Blair*, 275 S.C. 529, 273 S.E. (2d) 536 (1981). Additionally, we affirm the trial judge's ruling on the dispersal of the jury during lunch recess.

Affirmed in part and remanded with instructions.

GOOLSBY, J., and LITTLEJOHN, Acting J., concur.