23181

The STATE, Respondent v. Anthony GREEN, Appellant.

(392 S.E. (2d) 157)

Supreme Court

*John H. Blume, Franklin W. Draper, SC Office of Appellate Defense,* Columbia, *Michael P. O'Connell, Office of Public Defender,* Charleston, *Lawrence J. Rosintoski,* Mt. Pleasant, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* Columbia, and *Solicitor Charles M. Condon,* Charleston, *for respondent.*

Heard Dec. 4, 1989.

Decided March 19, 1990.

HARWELL, Justice:

Appellant Anthony Green was convicted for the murder and armed robbery of Susan Babich. He was sentenced to death for the murder and 25 years for the armed robbery. This case consolidates his direct appeal with the sentence review mandated by S.C.Code Ann. § 16-3-25 (1985). We affirm the convictions and sentences.

## FACTS

On November 21, 1987, appellant traveled in his car to the Charles Towne Square Shopping Mall in Charleston, where he parked in a rear parking lot. The victim, Susan Babich, parked beside appellant. Appellant got his rifle and approached Mrs. Babich's vehicle. After Mrs. Babich noticed him approaching, appellant then shot her in the head, took her pocketbook, and fled the scene.

Within less than half an hour after the shooting, appellant was apprehended in the mall area. The police spotted a rifle and also a checkbook in appellant's white Toyota Celica. The checkbook was later determined to belong to Mrs. Babich. In his opening argument, counsel for appellant stated that appellant did not deny shooting Mrs. Babich. According to his confession and accompanying statements to the investigating officer, appellant killed Mrs. Babich because she noticed him and looked back toward him.

The jury found appellant guilty and sentenced him to death. Appellant's exceptions on appeal are discussed below in the order in which they arose at trial.

## I. PRETRIAL ISSUES

### A. CHANGE OF VENUE

Appellant requested a change of venue based on the contention that jurors in Charleston County were more likely to impose a death sentence on a black defendant. As evidence, appellant cited statistics that eight of nine black defendants received death sentences while only four of eight white defendants received death sentences. Appellant concedes that some of these cases were re-trials because of reversals. At trial, the statistical evidence presented contained no details of the nature of the crimes involved nor the composition of the juries which heard the cases. The trial judge denied the motion for a change of venue because appellant did not carry his burden of proof on this motion. A motion for a change of venue is addressed to the sound discretion of the trial court, whose ruling will not be disturbed by this court absent an abuse of that discretion. *State v. Copeland*, 278 S.C. 572, 300 S.E. (2d) 63 (1982). We hold that the trial judge in this case properly denied the motion for change of venue.

### B. JURY SELECTION

#### 1. JUROR WILLIAM F. CANTY

Appellant submits that venireman William F. Canty should not have been qualified because his responses on voir dire indicated that he was racially biased. On voir dire, the following exchange occurred during defense

counsel's questioning of Canty regarding his racial attitudes:

Q: [W]ould the fact that my client's [sic] black and this lady was white influence your decision on what penalty Tony should receive . . .?

A: It's hard to say because my sister was attacked, robbed, my older sister. She got away from him. He got her pocketbook, and I was mugged when I was 15 and I got my wallet taken and my bike stolen.

Q: Was that by a black person?

A: By two black people . . . .

Q: What about that?

A: I just—that's what I was thinking when I was in there, thinking—I figured you all would probably ask me something like that. You know, it's hard for me to give a concrete answer because that's—that was a bad experience for me.

Q: Yes, sure.

A: I can say I sure would try not to, but, you know, its hard to know exactly what you're going to do when it comes down to it.

Q: Are you saying that the fact that my client is black might influence your decision as to what penalty he should receive?

A: It may. I can't guarantee that it won't. I'd like to say that I could, I couldn't. I'd like to say that I could not. It definitely won't influence my opinion, but I don't think I'd be truthful, you know, it may not. Because of things that have happened in my past, I can't help it.

The State did not cross-examine venireman Canty regarding his racial attitudes. Following voir dire, appellant moved to have Canty disqualified on the basis that his responses indicated racial prejudice. The trial judge refused the motion and appellant exercised a peremptory challenge to have Canty excused.

S.C. Code Ann. § 14-7-1020 provides:

> The court shall, on the motion of either party in the suit, examine on oath any person who is called as a juror to know whether he is related to either party, has any interest in the cause, has expressed or formed any

opinion, or is sensitive of any bias or prejudice therein, and the party objecting to the juror may introduce any competent evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he must be placed aside as to the trial of that cause and another must be called.

In order to protect the capital defendant's right to an impartial jury, he is entitled to have prospective jurors informed of the race of the defendant and questioned on their racial biases. *Turner v. Murray*, 476 U.S. 28, 106 S. Ct. 1683, 90 L. Ed. (2d) 27 (1986). If a juror is shown through voir dire to exhibit bias, the trial judge must exercise his discretion by disqualifying such a juror. A venireman must be excused if his opinions would prevent or substantially impair the performance of his duties as a juror in accordance with his oath and instructions. *Wainwright v. Witt*, 469 U.S. 412, 105 S. Ct. 844, 83 L. Ed. (2d) 841 (1985). The trial judge's failure to excuse juror Canty, in view of his answers, was error.

In reviewing an error as to the qualification of a juror, we engage in a three step analysis. First, as reflected by several South Carolina cases, an appellant must show that he exhausted all of his peremptory challenges. *State v. South*, 285 S.C. 529, 331 S.E. (2d) 775 (1985); *State v. Hardee*, 279 S.C. 409, 308 S.E. (2d) 521 (1983); *State v. Elmore*, 279 S.C. 417, 308 S.E. (2d) 781 (1983); *State v. Britt*, 237 S.C. 293, 117 S.E. (2d) 379 (1960). If appellant failed to exhaust all of his challenges, this Court need not examine whether a juror was erroneously qualified. If however, all peremptory challenges have been used, we move to a second step and examine the disputed juror to see if the juror was erroneously qualified. Finally, if a juror was erroneously qualified, then under an elementary principle of appellate review, the appellant must demonstrate that this error deprived him of a fair trial.

In most of the South Carolina cases involving peremptory challenges, appellants have failed to satisfy the first step of this process. In only one South Carolina case have we reached the second step of the review procedure. *State v. Cooper*, 291 S.C. 332, 353 S.E.2d 441 (1986). In *Cooper*, appellant asserted that the trial court erroneously qualifed a highway patrolman

as a juror who should have been excused for cause because he fell under a statutory exclusion.[1] For purposes of that opinion, we clarified the application of the statute and noted the judge's error in his interpretation of the statute. However, because we reversed that case for other reasons, it was not necessary for us to determine whether that error alone would have warranted reversal. In other words, we did not engage in the third step of the process outlined above.

In this case however, we reach the third step and are called upon to determine whether the judge's error warrants reversal. In making this analysis, we are guided by the decision of the United States Supreme Court in *Ross v. Oklahoma*, 487 U.S. 81, 108 S. Ct. 2273, 101 L. Ed. (2d) 80 (1988). In *Ross*, the Supreme Court held that in examining whether an appellant received a fair trial, we focus on those jurors who were ultimately seated. *Ross*, 108 S.Ct. at 2276. Here, as in *Ross*, none of the jurors ultimately seated was challenged for cause. In fact, after appellant exercised his final peremptory challenge, only two additional jurors were seated, neither of whom was challenged for cause.

The administration of peremptory challenges is circumcribed only by the necessity of granting the accused a fair and impartial trial. *State v. Lambert*, 276 S.C. 398, 279 S.E. (2d) 364 (1981); *State v. Bailey*, 273 S.C. 467, 257 S.E. (2d) 231 (1979). We have carefully reviewed the voir dire responses of all the jurors who ultimately heard this case and are convinced that appellant received a fair trial. This Court has always vigorously protected the rights of capital defendants through assuring that convictions are fairly obtained. We are at a loss to ascertain the prejudice in this case, thus, we hold that appellant has failed to demonstrate the third step of the process—that the error found deprived him of his right to a fair trial.

---

[1] S.C. Code Ann. § 14-7-820 (1976 and Supp.) provides:

No clerk or deputy clerk of the court, constable, sheriff, probate judge, county commissioner, magistrate, or other county officer or any person employed within the walls of any courthouse shall be eligible as a juror in any civil or criminal case.

## 2. JURORS MARGARET WILLIAMS AND RONALD BROWN

Appellant next contends that jurors Margaret Williams and Ronald Brown should have been disqualified because their responses on voir dire indicated a predisposition to only vote for the death penalty. First, we note that this issue is subject to the same analysis as employed above. Here, however, we do not find error in the judge's decision to qualify either juror.

A venireman must be excused only if his opinions would prevent or substantially impair the performance of his duties as a juror in accordance with his oath and instructions. *Wainwright v. Witt, supra; State v. Matthews,* 291 S.C. 339, 353 S.E. (2d) 444 (1986). The determination of whether a juror is qualified to serve on a death penalty case is within the sole discretion of the trial judge and is not reversible on appeal unless wholly unsupported by the evidence. *State v. Plemmons,* 286 S.C. 78, 332 S.E. (2d) 765 (1985), *vacated on other grounds,* 476 U.S. 1102, 106 S. Ct. 1943, 90 L. Ed. (2d) 353 (1986); *State v. Spann,* 279 S.C. 399, 308 S.E. (2d) 518 (1983). In reviewing the trial court's qualification or disqualification of prospective jurors, the responses of the challenged jurors must be examined in light of the entire *voir dire. State v. Spann, supra: State v. Gilbert,* 277 S.C. 53, 283 S.E. (2d) 179 (1981). The ultimate consideration is that the juror be unbiased, impartial and able to carry out the law as it is explained to him. In reviewing the responses of Mrs. Williams, we hold that she indicated she would wait until she "had been presented with the entire picture." She further indicated an understanding of the concept of mitigating circumstances and a respect for and willingness to "follow the law." We hold that the trial judge did not abuse his discretion in qualifying Juror Williams.

With regard to Mr. Brown, we find that while his responses indicated some confusion on his part, he demonstrated the ability to consider all evidence before reaching a decision. Further, any error in seating Brown would be harmless beyond a reasonable doubt in light of the fact that he was an alternate and it never became necessary to use the alternates in this case. *See O'Dell v.*

*Commonwealth,* 234 Va. 672, 364 S.E. (2d) 491 (1988); *Pope v. State,* 256 Ga. 195, 345 S.E. (2d) 831, 839 (1986).

### 3. JURORS CINDERELLA SMALLS, SONYA SCOTT, AND STEVE BROWN

During the course of jury selection, Jurors Smalls, Scott, and Brown were all struck by the State. Appellant argued to the trial court, as he does on appeal, that the State unconstitutionally struck these jurors because of their reservations against the death penalty. At trial, appellant requested that the State come forward with "non-death related" reasons for striking the jurors. The trial judge denied appellant's motion.

We see no merit in appellant's contention. A person should not be excused for *cause* merely because he expresses moral scruples against the death penalty unless such beliefs would substantially impair performance in his duties as a juror. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776 (1968). However, this rule has not been extended to apply to peremptory challenges. A prosecutor may exercise his peremptory challenges for *any* non-racially discriminatory reason. *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986). Accordingly where, as here, a prosecutor perceives that a person will have a problem imposing the death penalty, he may exercise a peremptory challenge against such a juror. This issue has no merit.

### 4. JURORS DEBORAH NELSON AND ROBERT A. PRINCE

Appellant contends the trial court erroneously disqualified jurors Deborah Nelson and Robert A. Prince. On review, the trial court's disqualification of a prospective juror will not be disturbed where there is a reasonable basis from which the trial court could have concluded that the juror would not have been able to faithfully discharge his responsibilities as a juror under the law. *State v. Gaskins,* 284 S.C. 105, 326 S.E. (2d) 132 (1985); *State v. Linder,* 276 S.C. 304, 278 S.E. (2d) 335 (1981). We have reviewed the entire voir dire examination of both jurors and agree that the trial judge properly excluded the jurors

because their views against capital punishment would have prevented or substantially impaired the performance of their duties as jurors.

## II. GUILT PHASE—ADMISSION OF PHOTOGRAPH OF VICTIM

During the presentation of its case, the State introduced a photograph which depicted the scene in the mall parking lot. The photograph shows two people between two parked cars, one bending to assist another, who appears to be kneeling on the ground on a blanket. Appellant argues admission of this photo was irrelevant and prejudicial as it depicted the victim lying in a pool of her own blood. This Court has reviewed the photograph and finds it to be nonprejudicial. The "pool of blood" of which appellant complains is, in fact, a red blanket. Further, the victim is not recognizable in the photograph. Therefore, this argument is completely without merit.

## III. PENALTY PHASE

### A. ADMISSIBILITY OF EVIDENCE OF OTHER CRIMES AND INSTRUCTIONS REGARDING THEIR CONSIDERATION

During the penalty phase of appellant's trial, the State introduced testimony and other evidence concerning appellant's commission of other crimes prior to the incident for which he now stands convicted. During opening argument, counsel for appellant conceded that his client did not deny committing these acts.

Freda Duke testified that on November 28, 1986, she left Belks at Northwoods Shopping Mall and walked to her car. As she put her key in the car door, a man whom she identified as appellant spoke to her and then pointed a rifle at her through his car window. He then told her to give him her purse. Mrs. Duke lay down on her seat and attempted to start her car, but was too nervous. Appellant drove up beside her car, and she handed him her purse by leaning through the window. As appellant was driving away, Mrs. Duke turned her head and appellant shot her in the face.

The State also presented testimony from Karen Cockfield that on the evening of July 25, 1987, someone broke into her

car in Summerville and stole her pocketbook containing her checkbook and credit cards. The following morning Miss Cockfield received a phone call from a young black male who claimed to work for Citizens & Southern Bank. The caller requested her secret code for her automatic teller card because it was "stuck" in the bank machine. When Miss Cockfield refused, the caller told her she "owed" him for not using the spare key in her purse to steal her car.

The next person to testify was Deborah Swagle. On August 27, 1987, she was approached by appellant, who was carrying a .22 caliber rifle. He directed her to unlock her door. Mrs. Swagle dropped her keys and told appellant he could have whatever he wanted. She went back into Service Merchandise, from where she watched appellant go through her car, get her purse, and then get into his car. On the same day, Mrs. Swagle's automatic teller card was used to withdraw $490.00 from her account. Also on the same day, appellant wrote out a check to Deborah Swagle on Miss Cockfield's account, and provided the drive through teller Mrs. Swagle's driver's license. The teller was unable to see appellant through his car's tinted windows. She received an indication that the check presented was stolen. As she was calling to verify this, appellant drove away.

Mrs. Eloise Sheppard also testified that she went to work at Northwoods Mall on September 30, 1987, and parked beside a white car with tinted windows. The driver, a black male, spoke to her as she walked past him on her way into the mall. Later that afternoon, at 5:00 p.m., Mrs. Sheppard left work and went to her car. As she was putting her packages into her car, she was shot from behind. She fell across the back seat where she was found by witness Wilma Carter. Mrs. Carter noticed a white car with tinted windows parked next to Mrs. Sheppard's car. Mrs. Sheppard survived, but still has a bullet in her head which is inoperable because of its closeness to an artery.

Appellant first argues that evidence of these prior crimes was inadmissible and that even if such evidence were admissible the judge's instructions to the jury regarding their consideration of such was erroneous. We find no merit in either contention.

S.C. Code Ann. § 16-3-20(B) provides that during the sentencing phase, "the jury or judge shall hear additional evidence in extenuation, mitigation or aggravation of the punishment." Before a death sentence is imposed, the jury's attention must be directed to the specific circumstances of the crime and the characteristics of the person who committed the crime. *State v. Shaw*, 273 S.C. 194, 255 S.E. (2d) 799 (1979). Admission of testimony that a defendant has attempted a similar crime or crimes to that for which he is on trial is proper because such testimony indicates a defendant's individual characteristics and predisposition to commit similar crimes. *State v. Stewart*, 283 S.C. 104, 320 S.E. (2d) 447 (1984); *State v. Koon*, 278 S.C. 528, 298 S.E. (2d) 769 (1982).

These crimes may not be used to prove statutory aggravating circumstances. Instead, the judge must properly limit the jury's consideration of these offenses to evidence of appellant's characteristics as they may bear logical relevance to the crime. *State v. Stewart, supra.* In this case, the trial judge instructed the jury as follows:

> I charge you that this evidence of these crimes, these other crimes, should not be considered as substantive evidence of aggravating circumstances; but if you are convinced that the defendant committed those crimes, or any of them, you may consider them as evidence of his character, his characteristics. These may be considered among with all of the other evidence and you may give them whatever weight you deem proper under the circumstances of this case.

This instruction adequately complied with the requirements of *State v. Stewart*, and was not error.

Appellant further contends the judge should have additionally instructed the jury that before it could consider these crimes it would have to find that the State had proven their commission beyond a reasonable doubt. First, we note that such an instruction would hardly have been critical in light of appellant's admission during opening statement that he committed these other crimes. Second, while such a charge is necessary where other crimes are being used to support an aggravating circumstance, it is not necessary where, as here,

such crimes are introduced merely to demonstrate the accused's character. A similar argument was rejected in *State v. Middleton*, 295 S.C. 318, 368 S.E. (2d) 457 (1988), in which we held that the jury was not required to find proof of other crimes clear and convincing when such were introduced to show character, not as aggravating circumstances. Obviously, our rejection of the necessity of a charge as to this lesser standard supports the refusal to charge the higher reasonable doubt standard appellant would urge us to accept here.

We hold that evidence of appellant's previous crimes was properly admitted and that the judge's charge to the jury concerning the consideration of such crimes was proper.

## B. JURY INSTRUCTIONS REGARDING MITIGATING CIRCUMSTANCES

Appellant next argues that the judge impermissibly conveyed to the jury that a mitigating circumstance could not be considered unless the jury *unanimously* determined that it was present in appellant's case. We have reviewed the jury instruction and find this contention to be meritless. The judge's use of the word "unanimous" was only in relation to the fact that the jury's verdict, be it for life or death, had to be unanimous, and that any finding as to the existence of an *aggravating* circumstance had to be unanimous. Nothing in the trial judge's instruction conveyed a similar message regarding mitigating factors.

Appellant also contends he was entitled to an instruction that the jury could impose a life sentence for "any reason or no reason at all." This same argument was rejected in *State v. Jones*, 298 S.C. 118, 378 S.E.2d 594 (1989), in which we held adequate the judge's instruction that the jury could consider any mitigating circumstance authorized by law and could impose a life sentence even if aggravating circumstances were found. In the present case, the trial judge specifically charged the jury:

> As a matter of fact, you may sentence the defendant to a life sentence irrespective of whether you find existence in the evidence of an alleged statutory mitigating circumstances or any other mitigating circumstance or not. . . . As I say, however, you may give a life sentence without finding the existence of a mitigating circum-

stance. And you, as I have told you before, may impose a life sentence even should you find beyond a reasonable doubt the existence of an alleged statutory aggravating circumstance.

This instruction adequately conveyed the substance of appellant's requested charge, thus there was no error.

## C. CLOSING ARGUMENT

Appellant contends the solicitor's closing argument focused impermissibly on the character of the victims, thus injecting an arbitrary factor into appellant's sentencing. We disagree. We have reviewed the argument and conclude that it focuses on the circumstances of the crimes and character of the defendant, not on that of the victims. Appellant's reliance on *South Carolina v. Gathers,*__U.S.__, 109 S. Ct. 2207, 104 L. Ed. (2d) 876 (1989), is therefore misplaced.

## IV. PROPORTIONALITY REVIEW

We have conducted the review mandated by S.C.Code Ann. § 16-3-25 (1985) and conclude that the sentence is not arbitrary, excessive, or disproportionate and that the evidence supports the jury's finding of the statutory aggravating circumstance. State v. Matthews, 296 S.C. 379, 373 S.E. (2d) 587 (1988); State v. Drayton, 293 S.C. 417, 361 S.E. (2d) 329 (1987); State v. Copeland, 278 S.C. 572, 300 S.E. (2d) 63 (1982).

## V. CONCLUSION

We affirm appellant's conviction for armed robbery and 25 year sentence. We also affirm his conviction for murder and sentence of death.

Affirmed.

GREGORY, C.J., and CHANDLER and TOAL, JJ., concur.

FINNEY, A.J., dissenting in separate opinion.

FINNEY, Justice, dissenting:

I respectfully dissent. The majority opinion holds that the trial court's failure to excuse venireman William F. Canty was error but not reversible error. In my view, the trial court's error was reversible. The majority concedes that

juror Canty's responses on voir dire indicated that he was racially biased. Defense counsel moved to have Canty excused for cause. The trial court denied the motion, and appellant exercised a peremptory challenge to remove Canty from the jury.

My dissent is addressed to the question of whether the trial court's refusal to excuse a prospective juror for cause constituted reversible error when such juror was peremptorily challenged and the defense used all of its allotted peremptory strikes.

There are several views on this issue. Some jurisdictions adhere to the holding that the use of a single peremptory strike against a challenged juror is not reversible error unless the accused was prejudiced. *See State v. Springer,* 172 Kan. 239, 239 P. (2d) 944 (1952). The decisive factor is whether or not the jury which tried the defendant was composed of impartial members. *See Ross v. Oklahoma,* 487 U.S. 81, 108 S. Ct. 2273, 101 L. Ed. (2d) 80, *reh'g denied,* 487 U.S. 1250, 109 S. Ct. 11, 101 L. Ed. (2d) 962 (1988). Other jurisdictions have determined that the prejudice requirement is met once defense counsel requests an additional peremptory challenge after exhausting the statutory number. *See Berry v. State,* 547 So. (2d) 969 (Fla. App. 1989).

Various jurisdictions have adopted a per se rule requiring reversal from the denial of a challenge for cause where a defendant's peremptory challenges are ultimately exhausted. *See United States v. Ricks,* 776 F. (2d) 455 (4th Cir. 1985), *on reh'g,* 802 F. (2d) 731 (1986), *cert. denied sub nom. King v. United States,* 479 U.S. 1009, 107 S. Ct. 650, 93 L. Ed. (2d) 705 (1986); *United States v. Allsup,* 566 F. (2d) 68, 71 (9th Cir. 1977); *see also Gray v. Mississippi,* 481 U.S. 648, 107 S. Ct. 2045, 95 L. Ed. (2d) 622 (1987); *State v. Bennett,* 382 S.E. (2d) 322 (W. Va. 1989).

The majority adopts the view that denial of a single challenge for cause is not reversible error unless the accused was prejudiced. Relying upon *Ross,* the majority implies that after exhausting ten peremptory strikes, Green had to challenge for cause an additional venireman to meet the prejudice requirement. This analysis promulgates an additional prerequisite for the exercise of peremptory challenges which is contrary to South Carolina law.

Our case is distinguishable from *Ross*. In *Ross*, the United States Supreme Court stated that Oklahoma law granted defendants nine peremptory challenges qualified by the requirement that they be used to cure erroneous refusals to excuse jurors for cause. Thus, defendants in Oklahoma do not have the "absolute freedom to use a peremptory challenge as [they] wish." *Ross*, 108 S. Ct. at 2279. Moreover, the Supreme Court declined to address the broader question of whether, "in the absence of Oklahoma's limitation on the 'right' to exercise peremptory challenges, 'a denial or impairment' of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove jurors who should have been excused for cause." *Ross*, 108 S. Ct. at 2280 n. 4. This is the question facing this Court.

In my view, the per se rule of automatic reversal is more effective in insuring the accused a fair and impartial trial. The statutorily created right to peremptory challenges is one of the most important of the rights reserved to an accused, and it "long has served the selection of an impartial jury." *Pointer v. United States*, 151 U.S. 396, 408, 14 S. Ct. 410, 414-15, 38 L. Ed. 208 (1894), *overruled in part, Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986). The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. (Emphasis added.) *Lewis v. United States*, 146 U.S. 370, 378, 13 S. Ct. 136, 139, 36 L. Ed. 1011 (1892).[2] While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory challenge permits rejection for a real or imagined partiality that is less easily designated or demonstrated. *Hayes v. State of Missouri*, 120 U.S. 68, 70, 7 S. Ct. 350, 351, 30 L. Ed. 578 (1887). It is often exercised upon the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another." *Lewis, supra*, 146 U.S. at 376, 13 S. Ct. at 138.

South Carolina Code § 14-7-1110 provides that in murder cases, the accused is entitled to ten peremptory challenges. In

---

[2] This right is limited by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L. Ed. (2d) 69 (1986), which restricts the use of peremptory challenges on racial grounds.

the instant case, the defense used one of his peremptory challenges to cure the erroneous for-cause ruling of the trial court, which effectively reduced this defendant's legislative right from ten challenges to nine challenges.

I would hold that it is reversible error, even without a showing of prejudice to the defendant, to force a defendant to use peremptory challenges on jurors who should be excused for cause since this has the effect of abridging the statutory right to exercise peremptory challenges.