24491

The STATE, Respondent v. Ricky GEORGE, Appellant.
(476 S.E. (2d) 903)

Supreme Court

---

500

*Senior Assistant Appellate Defender Wanda H. Haile,* of *S.C. Office of Appellate Defense,* of Columbia; and *William Issac Diggs,* of Myrtle Beach, *for Appellant.*

*Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka,* both of Columbia; and *Solicitor Ralph J. Wilson,* of Conway, *for Respondent.*

Heard Feb. 6, 1996.

Decided Sept. 3, 1996; Reh. Den. Oct. 4, 1996.

BURNETT, Justice:

The victim in this case, James S. Stanley, owned and operated a convenience store in Horry County. On the evening of August 8, 1992, Stanley was murdered while working at his store. Appellant along with Samuel Christian and David Wayne Graham were charged with murder, conspiracy to commit murder, and armed robbery. Appellant was convicted as charged and sentenced to death.[1] We affirm in part and remand in part.

## I. VOIR DIRE ISSUES

### A. *Statutory Excusals*

Prior to jury selection, three women with young children, Ms. Brown, Ms. Huggins, and Ms. Smith, were excused from jury service pursuant to the "childcare" exemption as provided in S.C. Code Ann. § 14-7-860 (Supp. 1995).[2] Brown requested excusal stating that her husband worked at night and that she was the primary caretaker for three children (one was three years of age). Huggins requested excusal because she had the sole duty to care for her five-year-old child. Smith requested excusal because she was the caretaker for her two-year-old daughter. Appellant contends that these statutory excusals violated his right to a venire pool that reflected a fair cross-section of the community. We disagree.

In *Duren v. Missouri*,[3] the United States Supreme Court determined that a Missouri statute providing an *automatic* exemption from jury service for *any woman* requesting not to serve violated the Sixth Amendment fair cross-section re-

---

[1] After pleading guilty, Graham received a life sentence (murder), thirty years consecutive imprisonment (armed robbery), and ten years concurrent imprisonment (conspiracy); and Christian received a life sentence (murder), fifteen years consecutive imprisonment (armed robbery), and ten years concurrent imprisonment (conspiracy).

[2] Because the issue is not presented in this case, we do not address whether the "childcare" exemption violates Equal Protection by excluding from its ambit men who, like women entitled to the exemption, care for young children.

[3] 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed. (2d) 579 (1979).

quirement. Nevertheless, the Court also recognized that "a State may have an important·interest in assuring that those members of the family responsible for the care of children are available to do so. An exemption appropriately tailored to this interest would, we think, survive a fair-cross-section challenge." 439 U.S. at 370, 99 S.Ct. at 671, 58 L.Ed. (2d) at 590.

Section 14-7-860 provides the presiding judge with the authority to excuse women with "childcare" responsibilities when (1) the woman desires to be excused from jury duty; (2) she has a child under the age of seven; (3) she has legal custody of the child and the duty to care for the child; and (4) she presents the court with facts warranting her excusal. Because § 14-7-860 is carefully tailored to the important interest of caring for children and does not *automatically* exclude *any woman* requesting not to serve, it survives a cross-section challenge. Moreover, in this matter, the facts established that the excused women qualified for the "childcare" exemption.

Next, Appellant argues that the judge erred in excusing Ms. Alston for "good cause" under § 14-7-860. Alston requested excusal stating that she cared for her mother of seventy years who had cancer, who required frequent medicating, and whose mind was bad. Because Appellant failed to object to her excusal, this argument is not preserved for appellate review. *State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991) (a contemporaneous objection on proper grounds is required to preserve an error for appellate review); *State v. Williams*, 303 S.C. 410, 401 S.E. (2d) 168 (1991) (issues not raised to and ruled on by the trial court are not preserved for appeal).

Mr. J. Martin, a nineteen-year-old high school student, ■ requested postponement of jury service to a date that did not conflict with school pursuant to S.C. Code Ann. § 14-7-845 (Supp. 1995). Appellant contends that the granting of this request for excusal was improper. We have previously held that the trial judge has the discretion to exclude prospective jurors for educational conflicts. *State v. South*, 285 S.C. 529, 331 S.E. (2d) 775, *cert. denied*, 474 U.S. 888, 106 S.Ct. 209, 88 L.Ed. (2d) 178 (1985). We therefore find no error in Martin's excusal.

### B. *Excusals for Death Penalty Views*

Appellant asserts that neither Ms. Whitaker nor Ms. G. Martin were emphatically opposed to recommending a sen-

tence of death, and it was error for the trial court to disqualify them. We disagree.

A venireperson must be excused only if her opinions would prevent or substantially impair the performance of her duties as a juror in accordance with her oath and instructions. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed. (2d) 841 (1985); *State v. Green*, 301 S.C. 347, 392 S.E. (2d) 157, *cert. denied*, 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed. (2d) 183 (1990). The determination of whether a juror is qualified to serve on a death penalty case is within the sole discretion of the trial judge and is not reviewable on appeal unless wholly unsupported by the evidence. *State v. Davis*, 309 S.C. 326, 422 S.E. (2d) 133 (1992), *cert. denied*, 408 U.S. 915, 113 S.Ct. 2355, 124 L.Ed. (2d) 263 (1993). When reviewing the trial court's qualification or disqualification of prospective jurors, the responses of the challenged jurors must be examined in light of the entire voir dire. *State v. Green, supra.*

Although Whitaker stated that she would have no problem determining that someone was guilty of murder, she repeatedly asserted that she did not think she could ever vote for or sign her name to a verdict sentencing someone to death. She also asserted that she could follow the law if it did not require imposition of the death penalty. As to Martin's qualification, several times during voir dire she declared that she did not think she could sign a form recommending the death penalty.

Our review of the record confirms that it would have been extremely difficult for Whitaker or Martin to impose a capital sentence. Accordingly, because the evidence supports their excusal, we find no error in so doing.

In addition, Appellant argued to the trial court, as he does on appeal, that the Solicitor unconstitutionally struck Ms. Adamson, a black female, based upon his personal opinion that she could not impose a capital sentence. Appellant maintains that the Solicitor did not present a race-neutral explanation for the use of his peremptory strike and, therefore, the burden of proof under *Batson v. Kentucky*[4] was not satisfied. We disagree.

---

[4] 476 U.S. 79, 1106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986). In *Purkett v. Elem*, — U.S. —, 115 S.Ct. 1769, 131 L.Ed. (2d) 834 (1995), the United States Supreme Court held that the proponent of the peremptory challenge need not present

A solicitor may exercise his peremptory challenges for any nonracially discriminatory reason. *Batson, supra.* We have previously held where, as here, a solicitor perceives that a person will have a problem imposing the death penalty, he may exercise a peremptory challenge against the juror. *State v. Green, supra.*

At first blush, Adamson's responses qualified her under *Wainwright v. Witt, supra.* Nevertheless, the Solicitor was a friend of Adamson, and based upon his personal knowledge of her beliefs and background, he concluded that she would be unable to fairly consider the death penalty. During a *Batson* hearing the Solicitor explained, "This has absolutely nothing to do with the race of this juror. I think the world of this juror. She is one of my friends. But she will not give the death penalty. I have no doubt in my mind about that." The trial judge determined that the Solicitor was entitled to strike Adamson for the reasons stated.

After careful review of the Solicitor's explanation for striking Adamson, we conclude that it was race-neutral and constitutional.

### C. *Qualification of Juror Watkins*

Appellant contends the trial judge erred in qualifying Mr. Watkins after he stated that he could not sign his name to a life sentence form. We disagree.

Initially, Watkins stated that if an aggravating circumstance was found, he could not sign his name to a life sentence verdict. However, when the judge further inquired as to his ability to serve, he answered as follows:

> Q: Now, I need to know this: Are you willing to listen to those instructions and to consider evidence which would warrant a life imprisonment, not necessarily do it, but are you willing to consider it, or are you telling me that once somebody is convicted of murder, you would always vote for the imposition of death? I need to know that.

---

reasonably specific, legitimate explanations for the strike, but need only present a racially neutral explanation. In *State v. Adams,* — S.C. —, 470 S.E. (2d) 366 (1996) (Davis Adv. Sh. No. 11 at 18), this Court adopted the standard delineated in *Purkett.* However, our decision in *Adams* does not affect the disposition of the issues in this matter.

A: No, I wouldn't because of that. I think I could listen to all the reasons and everything before I put down the punishment.

Q: You're telling me that you could put the punishment down for death, but equally, if you felt it warranted, even though convicted of murder, you could give him life imprisonment?

A: Yes. Yes, I do.

In addition, later during voir dire Watkins confirmed that he could give a life sentence even if an aggravating circumstance was unanimously found.

Although Watkins' responses are somewhat inconsistent, we conclude that he had the ability to perform the duties required of a juror and render a verdict of life or death in accordance with his oath and instructions. *Wainwright v. Witt,* *supra; State v. Green, supra.*

### D. *Qualification of Juror Walker*

Appellant maintains that Ms. Walker, who was married to an Horry County police officer, should have been disqualified for cause. We disagree.

According to S.C. Code Ann. § 14-7-820 (Supp. 1995), county officers are ineligible to be jurors. However, Walker was not a county employee, and her marriage to a police officer did not automatically disqualify her. *State v. Dingle,* 279 S.C. 278, 306 S.E. (2d) 223 (1983) (a juror is not automatically disqualified because of her relationship by blood or marriage to a police officer). Moreover, because Walker did not live in South Carolina nor was her husband employed as a police officer in Horry County at the time this crime was committed, she had no prior information concerning this matter. Accordingly, we find no error in her qualification.

### E. *Qualification of Juror Crislip*

Mr. Crislip indicated that before he could impose the death penalty, the homicide would have to be "very brutal" or "unjustifiable." If not, he stated that a sentence of life imprisonment would be appropriate. Appellant argues that Crislip misunderstood the law by believing that a defendant was required to present evidence justifying the murder before a life sentence could be imposed. Therefore, Appellant maintains that Crislip was erroneously qualified be-

cause he could not follow the judge's instructions within the meaning of *Wainwright v. Witt, supra.*

We have carefully reviewed Crislip's responses and conclude that he clarified his initial response by repeatedly indicating he understood that Appellant was not required to nor did he have a right to introduce mitigating evidence to establish justification for the murder. In addition, Crislip repeatedly stated that when determining the appropriate sentence, he would consider all of the options and would vote based upon the characteristics of the defendant and the circumstances of the crime. Hence, after receiving a thorough explanation of the law, Crislip confirmed that he understood it and that he would follow it. Accordingly, we find no error in qualifying Crislip.

## II. MOTION TO QUASH THE INDICTMENT

Appellant contends that the indictment in this case was issued by a grand jury from which black persons were excluded. In fact, he alleges that no black jurors had served on the grand jury in Horry County for four years. He therefore argues that because blacks were substantially underrepresented on the grand jury, an equal protection violation occurred, and the judge erred in denying his motion to quash the indictment.

Grand juries in South Carolina are selected as follows. Each county receives a list of individuals who reside within that county, who are over eighteen years of age, who hold a South Carolina driver's license or identification card, and who are United States citizens. This list is merged with the county list of registered voters to establish the roll of eligible jurors for that county. S.C. Code Ann. 6 14-7-130 (Supp. 1995). The grand jury venire is then selected from these eligible jurors pursuant to S.C. Code Ann. §§ 14-7-1510 to -1570 (supp. 1995). The names of eligible jurors are placed in a jury box from which a pool of fifty potential grand jurors are randomly drawn.[5] On the first day of the term of court of general sessions for the calendar year, the presiding judge qualifies these potential grand jurors. The names of the qualified jurors are

---

[5] Prior to July 1, 1992, the statute provided for thirty rather than fifty potential grand jurors to be drawn.

then placed in a container from which twelve are randomly chosen to serve as grand jurors. These twelve jurors serve together with six grand jurors held over from the previous year.

The systematic exclusion of blacks in the selection of grand jurors violates the Fourteenth Amendment Equal Protection Clause. *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed. (2d) 598 (1986). In *Castaneda v. Partida*,[6] the United States Supreme Court outlined the following test to be utilized when a defendant makes a grand jury discrimination claim:

> [I]n order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied.... Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time.... Finally, ... a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.... Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case.

430 U.S. 482, 494-95, 97 S.Ct. 1272, 1280, 51 L.Ed. (2d) 498, 510-11 (1977).

Although the record contains no statistical evidence to support Appellant's claim that blacks had been systematically or deliberately excluded, it appears that blacks were underrepresented on the grand jury in this matter. The record does establish that the trial court denied Appellant's request for a separate hearing to present data pertaining to the disqualification of individual grand jurors in Horry County during the

---

[6] 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed. (2d) 498 (1977).

four-year time period. We therefore conclude that Appellant was denied the opportunity as outlined in *Castaneda v. Partida, supra,* to provide statistics comparing the proportion of blacks in Horry County to the proportion called to serve as grand jurors over the four-year time period. Without this data, a determination as to whether a presumption of discrimination occurred could not be made.

We are unable from the record before us to determine whether a prima facie claim of discriminatory purpose existed which would have shifted the burden to the State to rebut Appellant's claim that the procedure employed in selecting grand jurors in Horry County resulted in an equal protection violation. Accordingly, we remand this issue to the circuit court for a factual inquiry as to Appellant's grand jury discrimination claim. Upon remand, the circuit court shall conduct a full hearing following the standard enunciated in *Castaneda v. Partida, supra,* and issue its order pursuant to Rule 52, SCRCP.

### III. GUILT PHASE ISSUES

Appellant first contends that police officers took a statement from him on August 10, 1992, in violation of his Sixth Amendment right to counsel and, therefore, the judge erred in admitting it during trial. Appellant next asserts that the judge erred in determining that probable cause existed to arrest him without a warrant and, therefore, his August 10th statement and the fruits therefrom (a gun, Stanley's wallet, and a red bandanna) should not have been admitted at trial. Lastly, Appellant argues that the State brought his character into evidence prematurely by suggesting that he was involved in prior acts involving drug dealing.

#### A. *Admission of the August 10th Statement.*

The Sixth Amendment right to counsel attaches when adversarial judicial proceedings have been initiated and at all critical stages. *Compare Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed. (2d) 424 (1977), *with Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed. (2d) 631 (1986). Hence, the right to counsel in judicial proceedings is distinguished from the Fifth Amendment *Miranda-Edwards* right to speak with counsel upon request in a custodial setting. *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed. (2d) 158 (1991); *State v. Wilder,* 306 S.C. 535, 413 S.E.

(2d) 323 (1991). Accordingly, the Sixth Amendment right does not attach simply because the defendant had been arrested or because the investigation has focused on him. *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed. (2d) 374 (1966). Further, the U.S. Supreme Court has indicated that the Sixth Amendment right attaches only "post-indictment," at least in the questioning/statement area. *See Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed. (2d) 293 (1990).

Appellant was arrested on August 10, 1992. After being read his *Miranda* rights from a form, he signed it indicating that he understood his rights and that he intended to waive each of them, and specifically, his right to have counsel present. Appellant then confessed to shooting Stanley, and further indicated to the police that he would help them find evidence relevant to the homicide. Because Appellant had not been indicted on August 10th when the statement was taken, he was in a custodial setting, judicial proceedings had not been initiated and, therefore, his Sixth Amendment right to counsel had not attached.

As to his Fifth Amendment right to have counsel assist in his interrogation, the record clearly indicates that Appellant waived this right by not requesting counsel and by signing the *Miranda* form. Accordingly, the trial court properly admitted the statement made on August 10th, as well as any fruits obtained from it.

### B. *Probable Cause*

Probable cause for a warrantless arrest exists when the circumstances within the arresting officer's knowledge are sufficient to lead a reasonable person to believe that a crime has been committed by the person being arrested. *State v. Moultrie,* 316 S.C. 547, 451 S.E. (2d) 34 (Ct. App. 1994). Whether probable cause exists depends upon the totality of the circumstances surrounding the information at the officers disposal. *Id.* Where the officers have probable cause to arrest, a confession obtained after warrantless entry into the suspect's home is *not* inadmissible under the exclusionary rule. *New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed. (2d) 13 (1990).

In this case, the accomplices were in custody and revealed to police officers that the triggerman, Appellant, was free. The arresting officer explained to the

judge that he would not have been able to secure a magistrate's signature on an arrest warrant until the following day. Because Appellant was a nonresident in the area and had no family ties to the community, the police considered him to be a flight risk.

When considering these circumstances, along with the fact that the underlying crime was murder and that Appellant may have been armed, we conclude that probable cause for a warrantless arrest existed. Accordingly, Appellant's August 10th statement as well as any fruits therefrom were admissible.

### C. *Admission of Character Evidence*

If the trial judge sustains a timely objection to testimony and gives the jury a curative instruction to disregard the testimony, the error is deemed to be cured. *State v. Craig*, 267 S.C. 262, 227 S.E. (2d) 306 (1976); *State v. Morris*, 307 S.C. 480, 415 S.E. (2d) 819 (Ct. App. 1991). No issue is preserved for appellate review if the objecting party accepts the judge's ruling and does not contemporaneously make an additional objection to the sufficiency of the curative charge or move for a mistrial. *Id.*

Appellant called Mr. Broothers to present evidence that he was acting under the duress and dominance of Christian and Graham. Broothers testified that prior to Stanley's murder, he and Appellant were walking to a grocery store when Graham drove up beside them. Graham jumped from the vehicle, and fired one gunshot in the air and one by Appellant's foot. Graham then threatened Appellant that if he didn't pay the debt money by the following week, Graham would f— him up. During cross-examination of Broothers, the State asked him if Appellant was involved in the drug business. Counsel for Appellant objected and moved for a mistrial asserting that the State brought Appellant's character into evidence prematurely by suggesting that he was involved in a prior bad act. The judge denied the motion for a mistrial and gave the following curative instruction.

> THE COURT: . . . you have heard some vague reference to some possible drug dealing. I tell you now as strongly as I can, I want you to dismiss all of that testimony from your minds. It has no bearing whatsoever on the guilt or innocence of this defendant who's charged with murder,

armed robbery, and conspiracy to commit murder. You must disregard that testimony in its direct and cross-examination stage. It's got nothing to do with it. You will not permit that statement from this witness even to enter into your deliberations as to the innocence of [sic] guilt of this defendant upon the three charges for which he stands indicted.

Appellant did not contemporaneously object to the sufficiency of the curative charge or move for a mistrial. Therefore, this issue is not preserved. Moreover, Appellant's possible drug dealing was merely suggested and no testimony was presented concerning such behavior. We conclude that the judge's instruction to disregard statements suggesting Appellant's involvement with drugs sufficiently cured any alleged error.

## IV. PENALTY PHASE ISSUES

### A. *Admission of the August 13th Statement*

After Appellant's arrest, police officers took a statement from him on August 13, 1992, which was received into evidence as character evidence during the penalty phase. On appeal, Appellant contends that this statement was taken in violation of his Sixth Amendment right to counsel and, therefore, it was error to admit it. We disagree.

Counsel was appointed to represent Appellant in the Stanley murder matter on August 12, 1992. On August 13th after Appellant was read his *Miranda* rights and properly executed the acknowledgment and waiver of rights forms, police officers interrogated him concerning an unrelated crime in Clarendon County.[7] A *Jackson v. Denno*[8] hearing was held during the penalty phase of trial, after which the judge concluded that Appellant's August 13th statement was admissible because (1) it was given freely and voluntarily in compliance with *Miranda*, (2) the police officers had no knowledge that counsel had been appointed for Appellant in the Stanley matter, and (3) the August 13th interrogation concerned an incident unrelated to Stanley's murder.

[7] On August 9, 1992, Appellant allegedly was involved in robbing and killing a store clerk at an Exxon gas station in Manning, South Carolina.

[8] 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. (2d) 908 (1964).

Appellant maintains that because counsel was appointed for him on August 12th for the Stanley matter, the judge erred in admitting his uncounseled August 13th statement. The circumstances surrounding the admission of the August 13th statement are analogous to the circumstances surrounding the admission of the August 10th statement as previously discussed. On August 13th, Appellant had not been indicted, he was in a custodial setting, and no judicial proceedings had been initiated against him. Therefore, his Sixth Amendment right to counsel had not attached. Moreover, the Sixth Amendment right to counsel is offense-specific. Accordingly, the mere fact that counsel was appointed in the Stanley matter, did not invoke the Sixth Amendment relating to a different matter. *See McNeil v. Wisconsin, supra; State v. Wilder, supra.* Thus, even if Appellant had invoked his Sixth Amendment right in the Stanley matter, it would not have been invoked for the Clarendon County incident.

As to Appellant's Fifth Amendment right to counsel, the record establishes that Appellant waived this right on August 13th by not requesting counsel and by signing the *Miranda* form. Accordingly, we find no error in admitting Appellant's August 13th statement as character evidence during the sentencing phase of trial.

B. *Evidence of Appellant's Involvement in a Prior Offense*

During the penalty phase, Appellant contended that the evidence concerning his involvement in a separate armed robbery in Clarendon County should be reviewed under a clear and convincing test. The judge rejected this contention after concluding that the evidence in question was being presented as character evidence rather than as evidence of a statutory aggravating circumstance.

In *State v. Middleton,*[9] we held that the jury is *not* required to find clear and convincing proof of other crimes when such are introduced to show character. Moreover, the admission of testimony that a defendant had attempted a similar crime as that for which he is on trial is proper because such testimony indicates a defendant's individual characteristics and predisposition to commit similar

---

[9] 295 S.C. 318, 368 S.E. (2d) 457 (1988).

crimes. *State v. Green, supra; State v. Stewart*, 283 S.C. 104, 320 S.E. (2d) 447 (1984). Nevertheless, because these crimes may not be used to prove statutory aggravating circumstances, the judge must properly limit the jury's consideration of these offenses to evidence of the appellant's characteristics as they may bear logical relevance to the crime. *Id.*

At trial, counsel for Appellant agreed with the judge when he ruled that the type of character evidence in question was clearly admissible under proper instruction from the court. The judge instructed the jury as follows:

> ... The State has presented to you for your information facts concerning the defendant's alleged prior and subsequent crimes. You must remember that previous or earlier convictions, or subsequent crimes, or alleged crimes are not and may not be used as proof of statutory aggravating circumstances. They cannot be used for that. The previous or subsequent allegations of crimes may only be considered by you in reference to the character of the defendant and for no other purpose. The defendant is on trial for his life and it is important that you have for your consideration all pertinent information about him. This evidence may be considered by you and given whatever weight, if any, that you feel it is entitled to.
>
> I emphasize again these alleged offenses may not be used by you as evidence of the aggravating circumstance which the State relies on. You may, if you choose, consider this as evidence of the defendant's characteristics as they bear logical reference to the crime for which he is being charged.

We conclude that this instruction sufficiently informed the jury that it was not to use the evidence concerning Appellant's involvement in a separate armed robbery to establish guilt of a statutory aggravating circumstance. Consequently, Appellant has failed to establish that the judge erred in not applying the clear and convincing test to this character evidence before admitting it.

### C. *Capital Punishment as a Deterrent*

Appellant contends that information concerning the effectiveness and propriety of capital punishment as a deterrent to crime was admissible as mitigating evidence. He argues that

the judge erred in not allowing Dr. Pierson to testify as an expert witness concerning the deterrent effect of capital punishment. We disagree.

The propriety of capital punishment is a matter for the legislature, not the jury. *State v. Gilbert*, 277 S.C. 53, 283 S.E. (2d) 179 (1981), *cert. denied*, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed. (2d) 863 (1982). Capital punishment has been legislatively approved and after being examined by this Court, it has been found to be constitutional *Id*. Therefore, evidence attempting to establish the effectiveness and propriety of capital punishment as an instrument of deterrence is irrelevant and should not be admitted. *State v. Plath*, 281 S.C. 1, 313 S.E. (2d) 619 (1984), *cert. denied*, 467 U.S. 1265, 104 S.Ct. 3560, 82 L.Ed. (2d) 862 (1984); *State v. Woomer*, 278 S.C. 468, 299 S.E. (2d) 317 (1982), *cert. denied*, 463 U.S. 1229, 103 S.Ct. 3572, 77 L.Ed. (2d) 1413 (1983). However, counsel for both sides may argue their respective opinions concerning the deterrent effect of capital punishment, but cannot introduce specific data to corroborate their views. *State v. Truesdale*, 301 S.C. 546, 393 S.E. (2d) 168 (1990), *cert. denied*, 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed. (2d) 861 (1991); *State v. Jones*, 298 S.C. 118, 378 S.E. (2d) 594 (1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1534, 108 L.Ed. (2d) 773 (110). Moreover, the sole function of the jury during the sentencing phase of trial is to select a penalty based upon the circumstances of the crime and the characteristics of the individual defendant. *State v. Plath*, *supra*.

Mitigating circumstances are details specific to the character of the defendant on trial and/of the circumstances of the crime he committed which are considered in order to reduce the degree of his moral culpability or guilt. Because the general effect of capital punishment as a deterrent to crimes does not qualify as a mitigating circumstance, the judge correctly relied upon precedent as cited above when ruling that Dr. Pierson's testimony was inadmissible.

### D. *The Law of Duress*

Appellant asserts that the trial judge erred in denying his request for an instruction on the law of duress as a *defense* to the armed robbery aggravating circumstance. However, Appellant made this request after he was found guilty and admitted to killing Stanley by shooting him.

We therefore conclude that an instruction on duress as a *defense* after Appellant's admission would have been inappropriate.

Nevertheless, a defendant's confession containing evidence that he may have acted under the domination of his co-defendant is admissible to prove a "duress or domination" mitigating circumstance. *State v. Howard*, 295 S.C. 462, 369 S.E. (2d) 132 (1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3174, 104 L.Ed. (2d) 1036 (1989). Appellant informed the jury that accomplice Graham had threatened his life if he did not kill Stanley. Thus, he contends that he was acting under duress while committing the crimes. The judge instructed the jury to consider as a mitigation circumstance "that the defendant acted under duress or under the domination of another person." As a result, the jury was aware that it could consider duress as a mitigating circumstance.

### E. *Solicitor's Comments*
Appellant relies upon the holding in *State v. Johnson*[10] and maintains that his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution were violated when the trial judge allowed the Solicitor to make comments during the sentencing phase concerning his lack of remorse.

Because Appellant failed to object when the challenged comments were made, this issue is not preserved for appellate review. *State v. Torrence, supra; State v. Williams, supra.*

### V. CONCLUSION
We have conducted a proportionality review pursuant to S.C. Code Ann. § 16-3-25 (1985). The sentence was not the result of passion, prejudice, or any other arbitrary factor; the evidence supports the finding of the aggravating circumstance; and the sentence is not disproportionate to that imposed in similar cases. *See State v. Nance*, — S.C. —, 466 S.E. (2d) 349 (filed January 8, 1996) (Davis Adv. Sh. No. 1 at 5); *State v. Young*, — S.C. —, 459 S.E. (2d) 84 (1995), *cert. denied*, — U.S. —, 116 S.Ct. 718, 133 L.Ed. (2d) 671 (1996); *State v. Elkins*, 312 S.C. 541, 436 S.E. (2d) 178 (1993), *cert. denied*, —

---

[10] 293 S.C. 321, 360 S.E. (2d) 317 (1987), *rev'd on other grounds in State v. Johnson*, 306 S.C. 119, 410 S.E. (2d) 547 (1991).

U.S. —, 114 S.Ct. 1634, 128 L.Ed. (2d) 357 (1994).

For the foregoing reasons, we remand Appellant's grand jury discrimination issue to the circuit court for a factual inquiry pursuant to the standard enunciated in *Castaneda v. Partida, supra.* In all other respects the order appealed from is affirmed.

Affirmed in part; remanded in part.

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.